THE STATE, EX REL. FREMONT, E. & M. V. R. R.
Co., v. H. A. BABCOCK, AUDITOR OF PUBLIC
ACCOUNTS, AND GILBERT L. LAWS, SECRETARY
OF STATE.

1. **Cities of Second Class.** Section 1 of the act entitled, "An act to provide for the organization, government, and powers of cities and villages," approved March 1, 1879, *Held*, To create, by the terms and force of said act, all towns and villages containing to exceed fifteen hundred and less than fifteen thousand inhabitants into cities of the second class, without any acceptance or other act of such town or city, or of its inhabitants.

2. ———: VILLAGES: BONDS. A city thus created out of a village possessed of a president and board of trustees may, until the election of a mayor and council, exercise the ordinary powers of a city of the second class, including the ordering of an election to vote bonds, and the issuing of bonds duly voted through the instrumentality and agency of the said president and trustees.

ORIGINAL application for mandamus to compel defendants to register bonds issued by the city of Wahoo, and delivered to the relator.

*John B. Hawley* and *N. C. Abbott*, for relator, cited: *State v. Holden*, 19 Neb., 249.

*William Leese, Attorney General*, for respondent, cited: *State v. Kinzer*, 20 Neb., 176. *People v. Porter*, 6 Cal., 26. *State, ex rel. McHenry, v. Jenkins*, 43 Mo., 265. *State v. Robinson*, 1 Kan., 17.

COBB, J.

Section 1 of the act entitled, "An act to provide for the organization, government, and powers of cities and villages," approved March 1, 1879, provides that, "All cities, towns, and villages containing more than fifteen hundred

and less than fifteen thousand inhabitants shall be cities of the second class, and be governed by the provisions of this chapter, unless they shall adopt a village government, as hereinafter provided." Laws 1879, 193.

It does not appear from the record before me what was the number of the inhabitants of Wahoo at the date of the taking effect of this act, but it may be presumed that it was less than fifteen hundred; but it does appear from the answer that, at the date of the notice and call for the election to vote the bonds involved in this proceeding, the number of such inhabitants exceeded fifteen hundred.

The question presented is, whether at that date Wahoo had, by the force and effect—the *jus vigore* of the said act, become and was a city of the second class, and as a secondary question, had such city, if it existed, the power, through the instrumentality and agency of the president and board of trustees of the late village of Wahoo, then in fact exercising municipal control, to order said election, issue the notice therefor, etc.? Neither the village nor the inhabitants of Wahoo had accepted a city charter, nor done any act to signify an intention to organize as a city. But this was not necessary. "The rule which applies to private corporations, that the incorporating act is ineffectual to constitute a corporate body until it is *assented to or accepted* by the corporators, has no application to statutes creating municipal corporations. These are imperative and binding without any consent, unless this act is expressly made conditional." 1 Dill. Munic. Corpt., 3d Ed., Sec. 44.

In addition to the construction of the laws generally on this subject, as above, by the most approved authority on this branch of the law, a brief examination of the legislation of our own state cannot fail to confirm the view that, by virtue of the act in part above quoted, all towns and villages which at the date of its taking effect had to exceed fifteen hundred and less than fifteen thousand in-

habitants, without any act on their part or on the part of their inhabitants, became possessed of the powers enumerated in said act, or expressly bestowed upon cities of the second class by law; and it necessarily follows that all towns and villages which at that date contained less than fifteen hundred inhabitants, but whose inhabitants should at a subsequent date exceed that number, then by force of the act itself, possess all such powers.

The act of 1873, Gen. Stats., 136, provided by section 1 that, "All cities and towns of the state of Nebraska containing more than five hundred and less than fifteen thousand inhabitants shall be cities of the second class."

Section 2 makes provision for cities then organized under a former act, as well as all cities and towns organized and acting under any special charter or statute passed by the legislature or state of Nebraska, becoming organized under said act, to-wit, by passing an ordinance, and causing the same to be published, etc.

This provision was found to be cumbersome and unnecessary, so that the act of 1879, which repeals that of 1873, requires no act on the part of the villages or towns upon which it operates, or of their inhabitants; but by the creative power of the legislature makes them cities of the second class, but nevertheless points out the manner by which the inhabitants of any such city may take themselves out of the operation of such law and adopt or re-adopt a village organization.

The statute also provides for the division of cities of the second class into "not less than two nor more than six wards, as may be provided by ordinance of the city council thereof," etc. It also provides for the election of a mayor, clerk, treasurer, city engineer, police judge, and councilmen, "at the time of holding the general city election for each year." Section 60 provides that the general city election shall be held "on the first Tuesday of April of each year." Comp. Stat., art. I., Ch. 14.

Now, as we have seen, this act became in force on the first day of September. No provision is made for the election of a mayor or councilmen in any city created by its provisions until the first day of April of the following year. For the term of seven months, then, the entire corporate power of the city must remain dormant, in desuetude, unless such corporate power can be exercised by such city through and by the use of the organic machinery of the superseded village or town government. This, of course, necessarily applies only to those villages and towns that at the date of the act contained the necessary number of inhabitants. But the same thing in principle would happen in every case. We have seen that the provisions of the act operate upon those villages and towns which had not at the date of its taking effect the required number of inhabitants, just so soon as, by reason of the increase of its population, the inhabitants of such town or village reach the required number. This may be the day following that of the general city election. In such case, if for a whole year the powers of the city are exercised at all, it must be done through the officers of the old organization.

Section 1 of chapter 45 of the Compiled Statutes, provides as follows:

"Section 1. That any county or city in the state of Nebraska is hereby authorized to issue bonds to aid in the construction of any railroad, or other work of internal improvement, to an amount to be determined by the county commissioners of such county, or the city council of such city, not exceeding ten per centum of the assessed valuation of all taxable property in said county or city; *Provided*, The county commissioners or city council shall first submit the question of the issuing of such bonds to a vote of the legal voters of said county or city, in the manner provided by chapter nine of the Revised Statutes of Nebraska for submitting to the people of a county the question of borrowing money."

Section 14 of the same chapter provides that: "Any precinct, township, or village (less than a city of the second class) organized according to law, is hereby authorized to issue bonds in aid of works of internal improvement, highways, bridges, railroads, court-house, jails, in any part of the county, and the drainage of swamp and wet lands, to an extent not exceeding ten per cent of the assessed value of the taxable property at the last assessment * * in the manner hereinafter directed." Then follows a provision requiring a petition signed by not less than fifty freeholders, to be presented to the county commissioners, and authorizing such commissioners, upon the receipt of such petition, to give notice and call an election in such precinct, town, or village, for the issuance of such bonds. I think that the sole reason for this distinction is, that in the opinion of the law-makers there was no power in a precinct, town, or village to call an election, and it was probably not deemed safe to invest them with such powers. But it will be observed that county commissioners are invested with no power to call an election to vote the bonds of a city. This power is vested in the common council of the city. Such is the letter of the law, but its real intent and meaning is to vest this power in the body politic— the city. The whole power of the city as a body politic is ordinarily exerted and exercised directly or indirectly through the mayor and common council. But they are not the body politic; it may exist without them, whatever dicta may be found to the contrary as to cities existing under royal charter. And I think that, after a city has been spoken into existence by the legislative fiat, and before an election of a mayor and councilmen has been held, the powers of the corporation, including those of calling an election and issuing bonds voted thereat, may be exercised by a president and board of trustees actually in office in such city.

These being the only questions presented, I think that

the bonds were lawfully issued, and that the writ ought to go.

WRIT AWARDED.

MAXWELL, J., concurs.

REESE, CH. J., did not sit.