HENRY HORNBERGER V. STATE OF NEBRASKA.

FILED FEBRUARY 4, 1896.   No. 8030.

1. Intoxicating Liquors: UNLAWFUL SALE: INFORMATION.
   *Held,* That the information was framed under section 20,
   chapter 50, Compiled Statutes, and charges a single of-
   fense, namely, that the accused kept intoxicating liquors
   in his place of business for the purpose of sale without a
   license or permit.

2. ———: ———: EVIDENCE. The unlawful intent with which
   the liquors were kept may be presumed from the fact of
   their sale in violation of law.

3. ———: ———: BURDEN OF PROOF. When, under an infor-
   mation for keeping intoxicating liquors for sale, a sale is
   proved, the burden is upon the accused to show that he
   held a license or permit from the proper authorities.

4. Evidence: RECORD. The existence of a record may be
   proved ·by its production, or an authenticated copy
   thereof. The non-existence of a record may be proved by
   the testimony of one who is cognizant of such fact.

5. Intoxicating Liquors: LICENSES: ORDINANCES. The sale of
   intoxicating liquors within cities and villages can only be
   carried on under ordinances duly enacted by the corpo-
   rate authorities thereof. Until a proper ordinance is
   adopted, no license or permit for the sale of liquors
   within such corporate limits can lawfully issue.

6. Evidence: INCORPORATION OF VILLAGES. Where a city or
   village is incorporated by a special act of the territorial
   legislature, the courts will take judicial notice of such in-
   corporation, in case the legislature has in said act de-
   clared it to be a public law.

7. Criminal Law: DIRECTING VERDICT. It is not error to re-
   fuse to direct a verdict for a defendant in a criminal
   prosecution, at the close of the testimony for the state,
   where the evidence before the jury would warrant a con-
   viction.

8. Harmless Error: INSTRUCTIONS. A conviction will not be
   reversed for the giving of an instruction containing harm-
   less error.

9. **Costs: Attorneys' Fees.**  An attorney's fee cannot be taxed against a defendant, under section 22, chapter 50, Compiled Statutes, in a case prosecuted by the county attorney.

10. **Criminal Law: Order Remanding Cause for Judgment.**  As the only prejudicial error in the record relates to the entering of judgment upon the verdict, the cause is remanded to the trial court, with directions to enter a proper judgment on the verdict. *Dodge v. People*, 4 Neb., 220, and *Griffen v. State*, 46 Neb., 282, followed.

Error to the district court for Sarpy county. Tried below before Blair, J.

*Schomp & Corson*, for plaintiff in error.

*A. S. Churchill, Attorney General*, and *George A. Day, Deputy Attorney General*, for the state.

Norval, J.

Plaintiff in error was convicted of keeping intoxicating liquors for the purpose of sale without a license, in violation of law, and was sentenced to pay a fine of $100 and costs of suit, and an attorney's fee of $50 to William R. Patrick.   The information under which the prosecution was had, omitting the verification, is as follows:

" State of Nebraska,  }
   County of Sarpy.    } ss.

" In the District Court of the Fourth Judicial District of Nebraska, in and for Sarpy County.

" The State of Nebraska, Plaintiff,  ⎫
                  v.                   ⎬
   Henry Hornberger, Defendant.        ⎭

" Be it remembered, that Henry C. Lefler, county attorney in and for Sarpy county, and in the fourth judicial district of the state of Nebraska, who prosecutes in the name and by the authority

of the state of Nebraska, comes herein in person
into this court at this, the October term, A. D.
1894, thereof, and for the state of Nebraska gives
the court to understand and be informed that he
has reason to believe, and does believe, that intox-
icating liquors, to-wit, beer and whiskey, were un-
lawfully and willfully kept by one Henry Horn-
berger in a certain two-story frame building,
occupied and conducted as a drug store by the
said Henry Hornberger, and situated on lot 8,
block 102, in the village of Bellevue, in said county
and state, on or about the 26th day of May, 1894;
that said liquor above described was intended to
be, and was then and there being, by and under the
direction of the said Henry Hornberger, unlaw-
fully sold, without a license or druggist's permit
having been obtained by said Henry Hornberger
for the sale of said liquors above described, ac-
cording to law, and that within thirty days preced-
ing the 26th day of May, 1894, to-wit, on or about
the 23d day of May, 1894, malt and spirituous
liquors, to-wit, beer and whiskey, were by said
Henry Hornberger sold in said premises above
described, without license or druggist's permit,
in violation of the provisions of chapter 50 of the
Statutes of Nebraska, contrary to the form of the
statute in such case made and provided, and
against the peace and dignity of the state of Ne-
braska.                    · HENRY C. LEFLER,
                        " *County Attorney.*"

The defendant filed a motion in the court below
to quash the information, on the ground that it did
not set out the names of the persons to whom the
sale of the liquors was alleged to have been made,
which motion was overruled, and this decision is
assigned as error.

It is, doubtless, true, as counsel for the accused in their brief contend, that in an information for the sale of intoxicating liquors the names of the persons to whom the unlawful sales were made must be alleged, if known, and if unknown, such fact should be averred as an excuse, or the information will be defective.    Such is the holding of this court.    (*State v. Pischel*, 16 Neb., 608; *Martin v. State*, 30 Neb., 423.)    It will be observed that the information herein does not contain such averment, and for that reason would be bad if the prosecution was for the violation of section 11 of chapter 50 of the Compiled Statutes, which makes it a misdemeanor for one to dispose of liquors without a license; but it is clear the information was framed under section 20 of said chapter, which makes it unlawful for any person to keep intoxicating liquors for the purpose of sale without license, and prescribes a penalty therefor. The gravamen of the charge here is not the selling of liquors in violation of law, but the keeping them in his place of business for sale without a license. The averment in the information relating to sales made by the defendant was inserted to show his unlawful intent in keeping the liquors for sale in contravention of the statute.    Such unlawful intent may be presumed from the fact of their sale without license.    (*Rauschkolb v. State*, 46 Neb., 658.) It was unnecessary to allege the names of the vendees of the liquors, and the motion to quash was properly overruled.

Objection was made to permitting Harry F. Clark to answer the following interrogatory, propounded to him by the state: "Q. You may state to the jury, in your own way, what took place there on that occasion with reference to any intox-

icating liquors of any character." The witness had already testified that he was acquainted with the accused, and to the witness' having been in the defendant's place of business on or about a certain day of May preceding the trial, when the accused and others were present. The criticism that the question was too general in its scope is not tenable. The purpose of the testimony sought to be ·elicited was relevant and material to the issue to be tried, whatever may be said as to the competency of the answer given by the witness. No objection, however, was made to the answer upon any ground; hence, it is not before us for review.

One John Nolan, the chairman of the board of trustees of the village of Bellevue, the municipality within which the alleged offense was committed, was examined as a witness on behalf of the state, and testified to purchasing and drinking beer in defendant's drug store on the 15th of May. The witness made further answers to questions put by the state, over the objections of the defendant, as follows:

76 Q. You may state to the jury whether or not a license for the sale of liquor, or a druggist's permit for the sale of liquor, was ever issued to the defendant by the board of trustees of the village of Bellevue.

Objected to as incompetent, irrelevant, immaterial, and for the further reason it is not shown that at that time he was chairman of the board of village trustees. Overruled, and defendant excepts.

A. Not since I have been a member.

77 Q. How long have you been a member of the board of trustees of the village of Bellevue?

A. This is my seventh year.

78 Q. Continuously?

A. Yes, sir.

\*        \*        \*        \*        \*        \*        \*

84 Q. Mr. Nolan, do you know whether or not the village trustees of Bellevue, by reason of any existing ordinance, are authorized at the present time, or whether or not they were empowered during the month of May last, to issue a license or druggist's permit?

Objected to as incompetent, hearsay, and that the records of the village of Bellevue are the best evidence.    Overruled, and defendant excepts.

A. We had no ordinance.    There was no ordinance empowering us to grant a permit to sell liquor, or give a license, in force them days.

85 Q. And never has been?

A. Not as I know of since I have been on the board.

86 Q. I will ask you if you know whether or not any application was ever made, by the defendant Hornberger, to the trustees of the village of Bellevue, either for a license or a druggist's permit, during the last year?

Objected to as incompetent, irrelevant, and immaterial.    Overruled, and defendant excepts.

A. Not to my knowledge.

The testimony objected to was immaterial, since, after the state had proved a sale of liquors, the *onus* was upon the accused to prove that he had a license or permit from the proper authorities.    He not having introduced any evidence tending to establish that he possessed such license or permit, the state was not called upon to establish a negative.    (*State v. Cron*, 23 Minn., 140; *State v. Bach*, 36 Minn., 234.)    The defendant could not have been in the least prejudiced before the jury

by the admission of the testimony quoted above, merely because the state made a stronger case than it was required to do.

It is contended, in argument, that question 76 was objectionable, in that it did not call for the best evidence. In other words, whether or not a permit or license was issued to the defendant for the sale of intoxicants, the recorded proceedings of the board of trustees were the best evidence of the fact of the issuing or non-issuing of such license or permit. Undoubtedly the journal of the proceedings of such board is admissible in evidence for the purpose suggested; but it is equally clear that it is proper to show that a license was not granted to a particular person by the testimony of the officer whose duty it would be to issue such license, if one were granted.

The contention is made that the testimony of Nolan as to the non-existence of an ordinance of the village authorizing the granting of liquor licenses or druggists' permits was incompetent and immaterial, for the reason such right is conferred by statute, and such power is not derived from ordinances. In this counsel is in error. They must have overlooked *State v. Andrews*, 11 Neb., 523, where it was held that " the traffic in liquors within the limits of cities and villages can only be carried on under ordinances duly passed by the corporate authorities thereof. Until this is done, no application can be made and no other step taken towards the procurement of a license to sell liquors within the limits of such corporation." If the village of Bellevue had not, by ordinance duly enacted, empowered its board of trustees to license and regulate the sale of intoxicating liquors within the limits of the village, it requires no ar-

gument to show that the keeping of liquors by the accused for sale within said corporation was with- . out sanction of law.   An ordinance, or a certified copy thereof, is the best evidence of its contents; but the non-existence of an ordinance of necessity cannot be proved in that mode.   It can be established by the testimony of the person who is cognizant of such fact, or it may be presumed by the absence of entry in the record of licenses.   There is a marked difference between testifying to the existence of a record and the absence of it.   (*Gutta Percha & Rubber Co. v. Village of Ogallala*, 40 Neb., 775; *Smith v. First Nat. Bank of Chadron*, 45 Neb., 444.)

Complaint is made of the overruling of the defendant's motion to dismiss, at the close of the state's testimony, on the ground no case had been made out against the prisoner.   It is conceded in the brief that the prosecution, when it closed its case, had proven that the accused had intoxicating liquors in his possession when arrested, which were seized under a search warrant; and further, had the state rested after showing the arrest of defendant and the seizure of the liquors, the burden would have been upon him, under the statute, to have shown that such liquors were kept for a lawful purpose, and not in violation of law; but it is argued that inasmuch as the state assumed the *onus* of proving that the defendant had no permit or license from the board of trustees of the village of Bellevue to sell intoxicating liquors, it became necessary for the state to establish that fact beyond a reasonable doubt, and that the prosecution failed in that regard; therefore the defendant was entitled to a peremptory instruction to the jury to return a verdict of acquittal.   This

argument is based upon the erroneous assumption
that the state had failed to establish that no li-
cense or permit had been issued to the defendant
by the board of trustees.   It was not only proven
that no such license or permit was issued, but that
none could have been granted, since the corporate
authorities of the village never had been author-
ized by ordinance so to do.

It is said there is no competent evidence in the
record of the incorporation of the village of Belle-
vue, and if it is unincorporated, the county board
of Sarpy county alone possessed the power to
grant a license or permit to sell intoxicating
liquors, and since the state failed to show that one
was not issued by such board, there can be no con-
viction.   It is true no articles of incorporation and
no legislative enactment incorporating Bellevue
were put in evidence, but this is not fatal to the
prosecution.   It was shown upon the trial that said
municipality elected village officers annually for
years, during which time the powers of a village
had been exercised by a board of trustees.   Suf-
ficient was established to show that Bellevue was,
at least, a *de facto* corporation.   (*Arapahoe Village
v. Albee*, 24 Neb., 242.)   Further, we know, al-
though not proven upon the trial, that Bellevue
was incorporated by special act passed by the ter-
ritorial legislature and approved March 15, 1855.
(Session Laws, 1855, p. 382.)   Its incorporation
has been subsequently recognized by the legis-
lature by the passage of amendments to its charter
and changing the geographical limits of the mu-
nicipality.   (See Session Laws, 1855, p. 423; Ses-
sion Laws, 1855-56, p. 171; Session Laws, 1858, p.
339; Session Laws, 1859-60, p. 109; Session Laws,
1860-61, p. 173; Session Laws, 1861-62, p. 135; Ses-

sion Laws, 1869, p. 269.) The foregoing acts are not, strictly speaking, private in their character, but are generally known and regarded as public local laws. By section 8 of "An act to amend an act entitled 'An act to incorporate Bellevue city' " (Session Laws, 1862, p. 135) it is provided: "This act and the act to which this is amendatory are hereby declared to be public acts," etc. Thus it will be observed that the legislature has declared the act incorporating Bellevue and the acts amendatory thereto to be public laws, and the courts will take judicial notice of such laws without proof of their existence. (*Bowie v. City of Kansas City*, 51 Mo., 454; *Town of Butler v. Robinson*, 75 Mo., 192.) The rule is stated thus in 1 Dillon, Municipal Corporations [3d ed.], sec. 83: " Courts will judicially notice the charter or incorporating act of a municipal corporation without being specially pleaded, not only when it is declared to be a public statute, but when it is public or general in its nature or purposes, though there be no express provision to that effect." (See 1 Beach, Public Corporations, sec. 74.) In *Hard v. City of Decorah*, 43 Ia., 313, Day, J., in delivering the opinion of the court, observes: " Where a town or city is incorporated by special act of the legislature, the statute partakes of the nature of a public act, and courts take judicial notice of it." This doctrine is fully sustained by the authorities. (*Prell v. McDonald*, 7 Kan., 426; *City of Solomon v. Hughes*, 24 Kan., 211; *Case v. Mayor of Mobile*, 30 Ala., 538; *State v. Mayor of Murfreesboro*, 30 Tenn., 216; *Stier v. City of Oskaloosa*, 41 Ia., 353; *State v. Tosney*, 26 Minn., 262; *Perryman v. City of Greenville*, 51 Ala., 507; *Village of Winooski v. Gokey*, 49 Vt., 282; *Doyle*

*v. Village of Bradford,* 90 Ill., 416; *Beaty v. Knowler,* 4 Pet. [U. S.], 152.)

We must not be understood as holding that courts will take judicial notice of the organization of cities and villages under the general laws of the state authorizing cities and villages to become incorporated, as this question is not before us. What we do decide is that where a city or village is incorporated by special act of the territorial legislature, we will take judicial notice of its incorporation, when the legislature has in said act declared it to be a public statute. We are mindful of the fact that the legislative enactments already mentioned incorporate "Bellevue city." We know judicially that Bellevue contains a population of less than 1,500 and more than 200. Therefore, by virtue of section 40 of the act of the legislature of 1879, entitled "An act to provide for the organization, government, and powers of cities and villages" (Session Laws, 1879, p. 193), Bellevue became *ipso facto* a village, governed by the provisions of said act. (*State v. Palmer,* 10 Neb., 203; *State v. Holden,* 19 Neb., 249; *State v. Babcock,* 25 Neb., 709.) It follows that its corporate authorities possessed the power to regulate and license the traffic of liquors within the limits of the corporation. There was no error in refusing to direct a nonsuit. If there had been no evidence before the jury sufficient to sustain a conviction, then, and then only, would it have been proper for the court to direct a verdict for the defendant below.

The next assignment of error is predicated upon the first paragraph of the instructions, which is in the following language: " The court instructs the jury that in order to find the defendant guilty it is

only necessary that the jury believe from the evidence, beyond a reasonable doubt, that the defendant, either by himself, his agent, or servant, on the 26th day of May, 1894, or within thirty days preceding that time, in the county of Sarpy and state of Nebraska, kept for sale, without license or permit, beer or whiskey." Two criticisms are made upon this instruction. It is claimed to be erroneous, because it failed to inform the jury that the liquors must have been kept for sale in the corporate limits of Bellevue, in order to constitute the offense charged. Plaintiff in error could not have been prejudiced by this omission, since the evidence was directed to proving that the defendant had the liquors in his place of business in the village of Bellevue, for the purpose of sale, and no testimony was offered to show that he had liquors anywhere else. In the next place this instruction is claimed to be bad, inasmuch as it limited the time within which the offense must be committed to thirty days prior to May 26, 1894. Had the place wherein the liquors were found been described in the information as the residence of the accused, then, under section 20 of chapter 50 of the Compiled Statutes, the limitation stated by the court would have been not only proper, but indispensable; but as the place set forth in the information is not a residence, the thirty days' limitation was unnecessary. It was more favorable to the defendant than he had a right to ask. The information was filed October 3, 1894, and as the penalty provided by law for the crime is not restricted to a fine of less than $100, the state had a right to show that the offense was committed at any time within eighteen months prior to the filing of the information. The error in the instruction was harmless. (*Jolly v. State*, 43 Neb., 857.)

By the third instruction the court told the jury, in effect, that the burden of showing a license or permit was upon the defendant. In this there was no error.

The motion in arrest of judgment is based upon an alleged insufficiency of the information. Having already held that a crime was charged, this assignment requires no further attention.

It is finally insisted that the judgment is contrary to law and is not supported by the findings, in so far as it awarded an attorney's fee of $50 to William R. Patrick, to be paid by the plaintiff in error. Section 22 of said chapter 50 provides: "In case the defendant is acquitted, he shall be discharged and the liquors returned; but if found guilty, in addition to the payment of a fine he shall pay all costs of prosecution, including a reasonable attorney's fee to the prosecuting attorney (in case the county attorney does not prosecute), to be determined by the court, in no case less than twenty-five dollars, which shall be taxed in the costs, and recovered as other costs." It is proper for the trial court under this statute, in case of a conviction, to tax against the defendant a fee of not less than $25, to be paid to the attorney who prosecuted, only where the county attorney does not conduct the prosecution. While the bill of exceptions shows that Mr. Patrick examined the witnesses, it appears from the journal entry in the case that the state was represented on the trial by "Henry C. Lefler, county attorney." This being true, no attorney's fee should have been allowed.

No other error being found in the record, the judgment, in accordance with *Dodge v. People*, 4 Neb., 220, and *Griffen v. State*, 46 Neb., 282, is reversed and the cause remanded to the district

court, with directions to enter the proper judg-
ment on the verdict heretofore returned.

REVERSED AND REMANDED.