STATE, EX REL. DOUGLAS COUNTY, V. ALBYN L. FRANK.

FILED APRIL 17, 1901.   No. 11,384.

1. **L gis ative Fractments:** JUDICIAL NOTICE. Courts will take'judicial notice of legislative enactments and of the records kept by the two houses of the legislature.

2. **Absence of Fecrd:** Presumption. Where legislative journals are defective or incomplete, their silence will not, as against an enrolled bill, be taken as conclusive evidence that the yeas and nays were not taken and recorded on the final passage of a bill.

3. ———: ———: EXTRINSIC EVIDENCE. Extrinsic evidence may not be received to contradict the legislative journals, but such evidence is competent to supply missing portions of the journals which had become detached through accident or design.

4. **Eniolled Bill:** PRIMA FACIE EVIDENCE. Enrollment, authentication and approval of an act of the legislature are *prima facie* evidence of the regularity of its enactment.

5. **Amendment:** GERMANE TO SECTION AMENDED. Chapter 31, Session Laws, 1899, amending section 3, chapter 28, Compiled Statutes, 1897, is germane to the section amended, and its provisions are within its title.

6 **General Law:** SPECIAL LEGISLATION. A general law, though affecting a single county, is not for that reason special legislation.

7. **Former Opinion.** Former opinion, 60 Nebr., 327, adhered to.

ERROR from the district court for Douglas county. Tried below before ESTELLE, J. Rehearing of case reported in 60 Nebr., 327. *Former decision of reversal sustained.*

*George W. Shields,* for plaintiff in error.

*Ed P. Smith* and *Greene & Breckenridge, contra.*

NORVAL, C. J.

This is a rehearing. The former opinion of the court, together with a statement of the facts, will be found reported in 60 Nebr., 327.

With an acerbity that lends not force to the argument, counsel for respondent Frank except to the opinion of

Justice SULLIVAN heretofore filed, as wrong in nearly all its conclusions. We will, therefore, consider practically all the assignments of counsel, with a view to determine whether we were right or wrong in reversing the judgment of the lower court, although all of the reasons set forth in the former opinion may not be referred to.

The points argued by counsel in their briefs on rehearing are:

1. The yeas and nays were not entered on the house journal as the constitution requires, at the time the bill passed the house, where it originated.

2. The house never concurred in the senate amendments, after the bill was returned by the latter, and never passed the bill as it was enrolled and signed by the governor.

3. The body of the act is broader than its title.

4. It is special legislation, so far as concerns respondent.

The record before us discloses the fact, although the journal does not show it, that the yeas and nays were recorded on the third reading in the house, but that portion of the journal which contained such entry is missing. It is doubtless the duty of the courts to take judicial notice of the laws enacted by the legislature, and of the records kept by the two branches thereof. To enable the court to ascertain what was done by the legislature, it may call to its assistance evidence of the character of that produced on the trial below. This evidence did not contradict the house journal; it merely established the record as in fact made by the legislature. It is fallacious to argue that such evidence contradicts the record; it merely supplies missing parts thereof and enables the court to know what the record in fact was when the legislature made it, not what it is after having been mutilated, through either accident or design. To hold that such evidence is not competent would result in the absurdity that, in case the journals of a session should be destroyed, all the acts passed at that session would be invalidated.

The journals of the legislature are like any other records. Should they be lost or destroyed, in whole or in part, the missing portions can be supplied by evidence of the same character as required when the contents of any lost or destroyed record are to be established or proved. The manner in which this journal was kept is fully discussed by Judge SULLIVAN in the former opinion, and need not be particularly referred to here. We may be pardoned perhaps, however, if we add that a system better calculated to facilitate mistakes, or the loss, through either design or carelessness, of portions of the journal, could not well have been adopted. It is conceded by counsel that the evidence introduced, if competent, impeached the journal, so far as related to the yeas and nays when the bill first passed the lower house, and the latter was, therefore, not competent to contradict the *prima facie* proof of regularity afforded by the duly enrolled bill, so far as relates to the first point argued; and it is, therefore, not necessary to discuss the same at greater length.

But, it is urged, this objection does not apply to the second point made, to-wit, that the house never concurred in the senate amendment. To this we can not assent, for the journal was in this respect discredited; at least evidence of such a character touching its integrity is adduced, in fact is supplied by the record itself, as required of respondent an explanation of its condition, and none is forthcoming. It is true there is no affirmative evidence in the journal to prove that a vote was taken by the house on the senate amendment, after the bill was returned to the house. Neither was there an attempt, except that afforded by the mere silence of that record, to prove the contrary, that no vote was taken. But, the journal itself proves that after the bill was returned to the house, accompanied by the usual message of the senate calling attention to the fact that the latter had amended the bill, and asking for the concurrence of the house therein, there appears in that portion of the journal wherein a vote on the senate amendment would, or at least could naturally

have been recorded, a hiatus; a page is torn out, merely a stub remaining.  Here then is further matter touching the integrity of the record which calls for an explanation on the part of the party who relies upon it to rebut the *prima facie* evidence afforded by the duly enrolled bill, but no evidence of that character was adduced. From the point where the missing page occurs, the journal is complete, and shows that, in due order, the senate was notified that the house had concurred in the senate amendments; the enrolling and engrossing committee reported to the house that the bill had been duly enrolled; that the bill as enrolled had been presented to the governor and received his approval; and that all other forms usual and necessary had been observed; all going to show that the members had ample opportunity to ascertain whether its servants had omitted any of their duties with respect to this record, and must have known that it had voted on the senate amendment, and that a record of such vote had been made, otherwise the further proceedings which the record shows were taken, would have been meaningless and foolish.  Now, taking into consideration the fact that in one particular this journal is conclusively shown to have been changed, after the action of the legislature on this very bill had been duly recorded, and that in another important particular it is defective or mutilated, and that no explanation of such condition is made by those who rely upon it to impeach the validity of the enrolled bill, a court must be constrained to hold that to this journal, so far as relates to the bill under consideration, the maxim, *falsus in uno, falsus in omnibus* applies, and that the court must refuse to consider it as a safe guide in determining whether this bill ever became a law, according to the mandate of the constitution.  Hence regardless of whether a presumption in favor of the regularity of legislative proceedings arises, there is nothing before the court to rebut the *prima facie* proof afforded by the enrolled bill, which purports to have been duly passed, and which fact stands uncontradicted by the

journal. This court is committed to the doctrine that the records of the lawmaking body may be looked into for the purpose of ascertaining whether a statute has been constitutionally enacted or not; and that the journals of the two houses are the highest class of evidence that can be adduced to establish or disprove such legislative acts. But, unless the unimpeached journals are in existence to rebut it, the enrolled bill is *prima facie* proof of the existence of a statute, and of the regularity of its enactment. The court is, under the facts in this case, amply justified in adhering to the conclusions reached in the former opinion relative to the point now under discussion, that "the condition of the house journal as a record of legislative action upon House Roll 251 does not justify us in accepting it as an unimpeachable witness, and we accordingly hold that the bill was passed in strict conformity with constitutional procedure."

We now pass to the consideration of the third point made in the brief on rehearing; that the body of the act is broader than the title, and, therefore, contravenes the constitutional mandate found in section 11, article 3, of that instrument. We will not attempt to follow closely the reasoning in the former opinion, but will answer such objections as seem to need it, and give some of the reasons which prompt the court in adhering to that opinion, so far as relates to this point. Counsel insist that that portion of the act which requires the clerk of the district court to report the amount of his fees at stated intervals to the county clerk, with what follows thereafter, is not germane to the original section 3 which it purports to amend, but is germane to section 1. It is argued that section 3 is a mere schedule of fees, and in and of itself does not profess to designate the persons to whom they shall belong, while section 1 does. This, with some others of the matters contended for by counsel, is probably true, but the trouble with the argument of counsel is that it assumes that section 1 is complete in itself and that section 3 is not, while, as a matter of fact, neither

section makes sense without the aid of the other. The two sections, while they are numbered separately, are mutually dependent. How this condition of things came about, a brief history of the chapter may assist us in determining, and in the end serve us in reaching a right conclusion on the point in controversy. This chapter was first enacted in 1865. See Session Laws, 1865, p. 20. The act is entitled "An act to regulate the salaries and fees of certain officers in the Territory of Nebraska." Section 1 is as follows: "Section 1. Be it enacted by the council and house of representatives of the territory of Nebraska: That the salaries and fees of the several officers hereinafter named throughout this territory shall be as they are hereinafter determined, and no more." Section 2 reads: "Section 2. The fees to be received by the clerk of the supreme court shall be as follows," and thereafter follows a schedule of fees. Section 3 provides: "Section 3. The fees to be received by the clerks of the district courts shall be as follows," and here follows a schedule practically as contained in the present section 3. In 1866 the statutes of the territory were revised by the legislature, and the statute in question appeared therein as chapter 19, without other title than the word "Fees," as is the case in the current Compiled Statutes, and sections 1, 2 and 3 are similar in wording as at present. It is evident that the legislature sought brevity in the revision, and, therefore, omitted the title and section 1 of the original act, drawing section 1 so that it would apply to all the succeeding sections, and at the beginning of each of such sections merely designating the officer for whom the schedule was intended. Although this chapter has been frequently amended, its general form has continued to the present time. This review enables us to understand why sections 1 and 3 are now mutually dependent, and why neither of them taken alone makes complete sense. The chapter has been condensed from a former more expanded statute, although the sense of the older statute has been retained. Formerly, section 1 was

not necessary to the sense of any of the subsequent sections, except perhaps it made more explicit the limitation on the amount to be received by the several officers designated in the act. Ever since the revision however, section 1 is necessary to the complete meaning of all subsequent sections, as is also each of the subsequent sections necessary to the full meaning of the first. Hence, the first section must be read in connection with each of the subsequent ones, exactly as if the former were printed and embodied as a part of each of them. The chapter is nothing more, so far as concerns its substance, than one section, with numerous subdivisions, each of which it is true is denominated a section, but which is in fact merely a paragraph or subdivision. It is, therefore, as illogical to call section 1 complete as it is to designate any of the subsequent sections as complete. It takes the first and at least one of the sections following to make complete sense—"useless each without the other." This court has frequently held that a subdivision of a section, as numbered in the statutes, may, so far as relates to its construction, be a section, within the meaning of that word as employed in the clause of the constitution under discussion. *State v. City of Kearney*, 49 Nebr., 325, and cases cited. This is the settled rule of this court and rests upon a solid basis of reasoning. If a subdivision of a section may be considered as a section, within the meaning of the constitution, then there is no reason why two sections in an act constituted as this one is, where it is necessary to read both together in order to make sense, may not be considered as a single section, subdivided into clauses, with one section or subdivision understood whenever the other is read. If we adopt this view, it is evident that an amendment that would be germane to section 1 would be germane to section 3, and *vice versa*, for the two are but parts of a single section. The principal argument of counsel is to the effect that the law in question is invalid because it is clearly germane to section 1 and not to section 3, and it is contended that if the amendment had

been connected with section 1, no lawyer would have questioned its validity. This, we think, is true, and for that very reason it is also germane to the remaining portion of section 1, that is, section 3. Nor is anything contained in said amendment not germane to the two subdivisions mentioned, that is, to section 1 and section 3, as they are designated in the chapter. The two sections together, taken as they were before the attempted amendment, accomplished a number of things. They fixed and limited the clerk's salary, or income from his office, the amount he was entitled to charge litigants, and determined the disposition to be made of it. What more do the two sections, as amended, accomplish? They require him to pay the excess of a certain amount into the county treasury, which in effect merely limits him in the amount he is to receive. He is further required to report, at stated intervals, to the county clerk the items of fees that have been paid into his office. This provision is merely to enable the proper authorities to keep account of the condition of his office, and is ancillary to the main object, the limiting of his fees. Should the county board consider a deputy necessary, it fixes his compensation, to be paid out of the avails of the office, after the clerk's salary is paid. The county board has no power given it to name the deputies, or to designate how many may be appointed. The appointing power is clearly left with the clerk, under section 43, chapter 19, Compiled Statutes. Whether such deputies shall receive pay from the income of the office, and the amount of such pay, are within the board's power, but no more. The clerk still retains authority to appoint his assistants, under section 43, but they can not be paid out of the surplus unless the county board authorizes it. This provision then does nothing more than dispose of the surplus, and in nowise conflicts with section 43, nor is it amendatory thereof, and the amendatory portions are germane to the sections mentioned.

Nor do we think the act is special legislation as re-

spects the respondent.  It is claimed that, although the act may be valid as against everybody else, including the successor of respondent, he was the only one to whom it was immediately applicable in so far as relates to counties having the population of Douglas, and it was not within the range of human possibilities that during his term of office there would be anybody else to whom it would apply, and that, therefore, the principle of *State v. Stuht,* 52 Nebr., 209, cited on this point on the former opinion is not in point, and that the act, so far as concerns respondent, comes within the inhibition of section 15, article 3, of the constitution, relating to prohibited special legislation.  The act in question relates to all clerks of district courts, classifying them by the population of their respective counties.  There is nothing in the bill to indicate that the legislature singled out Douglas county specially.  It so happens that this county, by reason of its population, falls in a class to which no other county is at present eligible.  There is nothing in the act which will preclude any other county in the state, so soon as it acquires the requisite population, from inclusion in the same class.  While it is true that the probabilities are against any other county reaching this class during the term of office now being served by respondent, it is not impossible, and there is nothing whatever in the bill to prevent such a county from entering this class.  In the absence of something more tangible than the mere doctrine of probablities, we must hold that there was no intention on the part of the legislature to enact special legislation in this bill, nor do we think it has done so.

The former opinion is, therefore, adhered to.

REVERSED.