ELIZABETH M. CANIGLIA, APPELLANT, V.
CITY OF OMAHA, A METROPOLITAN CITY,
ET AL., APPELLEES.

315 N.W.2d 241

Filed January 22, 1982. No. 43621.

Thomas F. Dowd of Dowd & Fahey for appellant.

Herbert M. Fitle, Omaha City Attorney, and Kent N. Whinnery for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and HASTINGS, JJ., and RONIN, Retired District Judge.

BOSLAUGH, J.

This is an appeal from a proceeding in error to review an order of the personnel board of the City of Omaha, Nebraska, dismissing the appeal of the plaintiff, Elizabeth M. Caniglia, from the order of the Public Works Department discharging her from her employment by the City.

The plaintiff was employed as a clerk-typist in the Missouri River sewage treatment plant division of the department. During her employment she was absent from work on a number of occasions because of illness and emotional problems. In January of 1978 she was asked to seek help through the city's

health assistance program because her work performance had not been satisfactory. On December 12, 1979, the plaintiff was notified in writing that she was suspended from employment effective December 17, 1979, pending dismissal on January 1, 1980. The plaintiff then perfected an appeal to the personnel board. After an evidentiary hearing the personnel board, by a vote of two to two with one member absent, denied the appeal.

The District Court found that there was competent evidence to sustain the order of the personnel board and that the action was not arbitrary, capricious, or unreasonable. The plaintiff has appealed from the order dismissing her petition in error.

The standard of review in a proceeding in error is well established. The review is solely upon the record made by the tribunal whose action is being reviewed. If the record shows that the administrative agency acted within its jurisdiction and its findings are sustained by some competent evidence, its action must be sustained. *Harnett v. City of Omaha*, 188 Neb. 449, 197 N.W.2d 375 (1972).

The record before the personnel board shows that the plaintiff had been employed by the City for 3 years as a regular employee, and for 3 years as a CETA employee. Since 1978 there had been a serious problem concerning her attendance at work and the performance of her work. In an effort to improve the situation she had been encouraged to seek help through the city's health assistance program. After she had participated in the program for 2 years, the manager of the plant, who was her supervisor, concluded she had made no long-term progress. This view was shared by a witness from the health and benefits section of the city's personnel department.

As a part of her duties the plaintiff prepared what is referred to in the record as budget sheets. These were to be prepared monthly, and in an effort to assist the plaintiff in completing this work, the last 5

working days of each month were set aside for her to work only on the budget sheets. Although there was some delay in receiving the necessary information, most of the delay in completing this work was due to the plaintiff's absences from work. In some instances there was a 6- to 7-month delay in completing the budget sheets.

The record contains the requests for leave submitted by the plaintiff in 1979. They show a total of 302 hours in 46 separate requests, which would be equivalent to approximately 38 working days.

The written notice of termination, dated December 12, 1979, summarized the basis for the termination of the plaintiff's employment. It noted that the plaintiff had been associated with the health assistance program since January 1978 but there had been no overall improvement in work performance. Since January 1, 1978, the plaintiff had used over 2 months' sick leave and had exhausted both her annual leave and sick leave. On January 27, 1978, and on November 2, 1978, the plaintiff had received 1-day suspensions for absenteeism. In November of 1978 the plaintiff received a written reprimand for failure to meet deadlines and catch up in her work. Since November 1978 the plaintiff had not caught up with her work and her absenteeism had resulted in her being further behind in her work.

The labor contract authorizes the demotion or discharge of an employee for "failure to perform job in a satisfactory manner." It also provides for a system of progressive discipline so that discharge is authorized after the fifth offense. The plaintiff contends that the City was required to impose preliminary disciplinary actions, such as reprimands and suspensions, which are authorized by the contract for the first four offenses, before the plaintiff could be discharged. The contract does not so provide. The limitation, as we understand the contract, is that an employee cannot be discharged for failure to perform

her job in a satisfactory manner until there have been five offenses within a period of 2 years. The evidence before the personnel board was sufficient to show that requirement of the contract had been satisfied.

The plaintiff also claims that it was erroneous to place a burden of disproving good cause on her, and that any action of the personnel board required three affirmative votes.

The proceeding before the personnel board was an appeal by the plaintiff from the action of the Public Works Department discharging her from her employment by the City. In the absence of an appeal, her discharge would have been final. The general rule is that an appellant has the burden to establish error in the action or order from which the appeal has been taken. In this case the plaintiff had the burden to show that good cause for her dismissal did not exist. The only burden upon the City, so far as the hearing before the personnel board was concerned, was to counter any evidence of the plaintiff so that the record before the board would support a finding that the dismissal was justified. To the extent that the opinion in *Shepherd v. City of Omaha*, 194 Neb. 813, 235 N.W.2d 873 (1975), may imply that the City has the burden of proof to establish "good cause" for the discharge of an employee who has appealed to the personnel board, the opinion is disapproved.

The plaintiff argues that § 6.04(7) of the home rule charter of the City requires three affirmative votes for any final action on any matter before the board. The record does not contain any provisions of the charter and it is a matter of which this court cannot take judicial notice. See *Dell v. City of Lincoln*, 168 Neb. 174, 95 N.W.2d 336 (1959).

In other situations we have held that where the vote of the members of a tribunal is evenly divided, it is treated as a denial of any affirmative relief. See 21 C.J.S. *Courts* § 184 b (1940); *Moser v. Turner*, 180 Neb. 635, 144 N.W.2d 192 (1966). Such a rule is one

of necessity to prevent deadlocks, and to permit a review of the action of the tribunal.

As the record now stands, the decision of the District Court was correct and its judgment is affirmed.
AFFIRMED.

KRIVOSHA, C.J., dissenting.

I find that, upon further consideration of this matter, I must respectfully dissent. The majority's opinion is, in part, based upon the court's conclusion that we cannot take judicial notice of § 6.04(7) of the home rule charter of the City of Omaha, and cites as authority for that position *Dell v. City of Lincoln,* 168 Neb. 174, 95 N.W.2d 336 (1959). It is with that aspect of the opinion that I disagree. While it is true, as noted by the majority, that a court of original jurisdiction, in the first instance, and an appellate court, on review, will not take judicial notice of a *municipal ordinance,* the situation is otherwise with regard to a home rule charter of a municipality. See *Young v. Seattle,* 30 Wash. 2d 357, 191 P.2d 273 (1948). The *Dell* case, cited by the majority, and those cases cited in the *Dell* case in support of that position all involved municipal ordinances.

In the instant case, however, we are not dealing with a municipal ordinance but, rather, with a provision of a home rule charter created pursuant to Neb. Const. art. XI, §§ 2 and 5. The difference between a municipal ordinance and a home rule charter created pursuant to the Nebraska Constitution is significant. While the municipal ordinance in its latest form may not be available for examination, a home rule charter is required by the Constitution of Nebraska to be certified by the city clerk and filed with the Secretary of State and does not become the charter unless and until it is filed with the Secretary of State. Likewise, all amendments of such charter are required to be authenticated by the city clerk and filed with the Secretary of State. In my view, this also is a signif-

icant factor.

While earlier writers may have viewed judicial notice as being limited to those matters of common knowledge, the more modern trend of judicial notice is shifting from the test of common knowledge to that of verifiable certainty. See, 29 Am. Jur. 2d *Evidence* § 25 (1967); McCormick, *Judicial Notice,* 5 Vand. L. Rev. 296 (1952).

Neb. Rev. Stat. § 27-201(2) (Reissue 1979) specifically provides that a judicial notice fact may not only be one which is generally known but may also be a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Furthermore, § 27-201(3) provides that "[a] judge or court may take judicial notice, whether requested or not." An examination of earlier decisions by this court would seem to indicate that we have heretofore agreed to take judicial notice of matters whose accuracy is not in any significant degree more easily verified than the home rule charter of the City of Omaha. Without suggesting that an exhaustive study of the matter has been made, some examples are the following. In *Hornberger v. State,* 47 Neb. 40, 66 N.W. 23 (1896), we held that where a city or village is incorporated by a special act of the Territorial Legislature, the courts will take judicial notice of such incorporation in case the Legislature has in said act declared it to be a public law. In doing so, we specifically said at 49, 66 N.W. at 26: "'Courts will judicially notice the charter or incorporating act of a municipal corporation without being specially pleaded, not only when it is declared to be a public statute, but when it is public or general in its nature or purposes, though there be no express provision to that effect.'" As a result, in *Hornberger* we took judicial notice of the fact that the city of Bellevue contained a population of less than 1,500 and more than 200 and was therefore governed by virtue of § 40 of 1879 Neb. Laws, p. 193, entitled "AN ACT To provide for the organization,

government, and powers of cities and villages."

In *State v. Frank*, 61 Neb. 679, 85 N.W. 956 (1901), we held that courts will take judicial notice of legislative enactments and of the records kept by the two houses of the Legislature. It would seem that such a record is no more reliable than a charter filed with the Secretary of State. In *Elmen v. State Board of Equalization and Assessment*, 120 Neb. 141, 231 N.W. 772 (1930), we held that this court takes judicial notice of the proceedings of the constitutional convention and of the journals of the House of Representatives and of the Senate.

And in *Elson v. Harbert*, 190 Neb. 437, 208 N.W.2d 703 (1973), we held that we would take judicial notice that Frontier County was a county of less than 7,000 people and that therefore Neb. Rev. Stat. § 32-307 (Reissue 1968) was applicable. And in *Bohy v. Abbott*, 154 Neb. 139, 47 N.W.2d 95 (1951), we held that state courts will take judicial notice of general rules and regulations established and published by federal agencies under authority of law. Why we should agree to take judicial notice of general rules and regulations published by federal agencies and refuse to take judicial notice of the home rule charter of the City of Omaha, filed with the Secretary of State, is difficult for me to understand.

While I do not disagree with our earlier holdings, I fail to see why we have had no difficulty taking judicial notice of these various facts and now determine that we will not take judicial notice of a fact required to be filed with the Secretary of State. It is for that reason that I would have taken judicial notice of § 6.04(7) of the home rule charter of the City of Omaha and, accordingly, would have held that the personnel board has yet failed to act on the appeal, thereby making the appeal to this court at this time moot.

BRODKEY, J., joins in this dissent.