Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/15/2023 09:07 AM CST

- 596 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

Uhrich & Brown Limited Partnership, appellee,
v. Middle Republican Natural Resources
District et al., appellants.

Merlin Brown, appellee, v. Middle
Republican Natural Resources
District et al., appellants.

___ N.W.2d ___

Filed December 15, 2023.    Nos. S-23-169, S-23-174.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or
   final order rendered by a district court in a judicial review pursuant to
   the Administrative Procedure Act may be reversed, vacated, or modified
   by an appellate court for errors appearing on the record.
2. ____: ____: ____. When reviewing an order of a district court under
   the Administrative Procedure Act for errors appearing on the record, the
   inquiry is whether the decision conforms to the law, is supported by com-
   petent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Judgments: Appeal and Error.** An appellate court, in reviewing a dis-
   trict court's judgment for errors appearing on the record, will not substi-
   tute its factual findings for those of the district court where competent
   evidence supports those findings.
4. **Constitutional Law: Due Process.** The determination of whether the
   procedures afforded an individual comport with constitutional require-
   ments for procedural due process presents a question of law.
5. **Judgments: Appeal and Error.** On a question of law, an appellate court
   is obligated to reach a conclusion independent of the determination
   reached by the court below.
6. **Due Process: Trial.** A fair trial in a fair tribunal is a basic requirement
   of due process.
7. **Constitutional Law: Due Process.** Not only is a biased decisionmaker
   constitutionally unacceptable, but the U.S. system of law has always
   endeavored to prevent even the probability of unfairness.

- 597 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
315 NEBRASKA REPORTS
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

8. **Administrative Law: Due Process.** A party appearing in an adjudication hearing before an agency or tribunal is entitled to due process protections similar to those given litigants in a judicial proceeding; this includes the right to a hearing before an impartial, unbiased decisionmaker.

9. **Administrative Law: Presumptions.** Decisionmakers are accorded a presumption of honesty and integrity, and of being qualified, unbiased, and unprejudiced; administrative adjudicators serve with the same presumption.

10. **Administrative Law: Recusal: Presumptions: Proof.** A party seeking to disqualify an administrative adjudicator on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of honesty and integrity.

11. **Constitutional Law: Administrative Law: Presumptions: Proof.** To overcome the presumption of honesty and integrity of an administrative adjudicator, there must be a showing of actual bias or a showing that the probability of actual bias is too high to be constitutionally tolerable.

12. **Constitutional Law: Administrative Law: Judges.** Rather than inquiring into whether the judge or adjudicator is actually, subjectively biased, the question is whether the average judge in his or her position is likely to be neutral, or whether there is an unconstitutional potential for bias.

13. **Administrative Law.** Central to whether the average administrative decisionmaker in a similar position is likely to be neutral is the extent of separation between the investigative, prosecutorial, and adjudicative roles in the case.

14. **Criminal Law: Administrative Law: Due Process.** In a criminal trial, due process requires the strict separation of investigative, prosecutorial, and adjudicative functions; in an administrative proceeding, due process requires an adequate separation of investigative, prosecutorial, and adjudicative roles.

15. **Administrative Law: Courts.** Courts must bear in mind the way particular administrative procedures actually work in practice.

16. **Administrative Law: Due Process.** The mere fact that investigative, prosecutorial, and adjudicative functions are combined within one administrative agency does not give rise to a due process violation.

17. **Administrative Law.** Adequate separation of administrative functions can be accomplished internally at the individual level rather than at the institutional level.

18. ____. To some extent, combinations of investigative, prosecutorial, and adjudicative functions in the same administrative agency inhere in the very nature of the administrative process.

- 598 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
315 NEBRASKA REPORTS
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

19. ____. Requiring administrative agencies to maintain a rigid separation of functions would deprive agencies of the flexibility needed to conduct their complex and varied functions.

20. **Administrative Law: Prosecuting Attorneys: Due Process.** It is the general rule that a combination of prosecutorial and adjudicative functions in the same person is incompatible with due process, such as where the person prosecuting a case on behalf of a public body is also a member of the decisionmaking body or advisor to it on the same matter.

21. **Administrative Law: Attorneys at Law.** Administrative agency counsel who performs as an advocate in a given case is generally precluded from advising a decisionmaking body in the same case.

22. **Administrative Law: Prosecuting Attorneys.** An administrative prosecutor or advocate, by definition, is partisan for a particular client or point of view.

23. **Constitutional Law: Prosecuting Attorneys.** Generally, the role of prosecutor is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator.

24. ____: ____. The prosecutor or advocate in an administrative proceeding generally will have a will to win—a psychological commitment to achieving a particular result because of involvement on the agency's team.

25. **Evidence: Words and Phrases.** Competent evidence means evidence that tends to establish the fact in issue. It is evidence that is admissible and relevant on the point in issue.

26. **Administrative Law: Words and Phrases.** A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion.

27. **Words and Phrases.** A capricious decision is one guided by fancy rather than by judgment or settled purpose.

28. ____. The term "unreasonable" can be applied to a decision only if the evidence presented leaves no room for differences of opinion among reasonable minds.

29. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party assigning the error.

30. **Administrative Law: Evidence: Appeal and Error.** The Administrative Procedure Act does not authorize a district court's reviewing the decision of an administrative agency to receive additional evidence.

31. **Constitutional Law: Administrative Law: Appeal and Error.** When the facts and circumstances of administrative proceedings show an improper combination of functions such that there exists a risk of bias

- 599 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

on the part of the decisionmaker that is too high to be constitutionally tolerable, this amounts to structural error requiring reversal.

32. **Trial: Appeal and Error.** The right to an impartial adjudicator is so basic to a fair trial that its infraction can never be treated as harmless error.

Appeals from the District Court for Frontier County: James E. Doyle IV, Judge. Affirmed.

Donald G. Blankenau and Kennon G. Meyer, of Blankenau, Wilmoth & Jarecke, L.L.P., for appellants.

Cody E. Siegfried, of Goodwin Siegfried, L.L.P., for appellee Uhrich & Brown Limited Partnership.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

Following administrative hearings, the board of directors of a natural resources district adopted resolutions finding that two landowners violated certain ground water management rules and requiring them to comply with the natural resources district's cease-and-desist order imposing penalties. On appeal under the Administrative Procedure Act (APA),[1] the district court reversed and vacated the board of directors' determinations after finding a violation of the landowners' due process right to an impartial tribunal because the natural resources district's attorneys were involved in the decision-making process of the case after exercising both investigative and prosecutorial roles. The natural resources district challenges the district court's order, arguing the record is devoid of any facts that would support the district court's finding that

---

[1] See Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2014 & Cum. Supp. 2022).

- 600 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

the natural resources district's attorneys were included in the decisionmaking process. Because the district court's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable, we affirm.

## BACKGROUND

### Prehearing Correspondence

Merlin Brown and Uhrich & Brown Limited Partnership own agricultural land in Red Willow County, Nebraska. Brown is the general partner of the limited partnership. Brown and the limited partnership (collectively the landowners) leased this land to tenants, who farm and operate the land pursuant to a lease agreement.

In August 2020, the Board of Directors (Board) of the Middle Republican Natural Resources District (NRD) adopted resolutions providing that the landowners had likely violated the Nebraska Ground Water Management and Protection Act (NGWMPA) and the rules and regulations of the NRD. The resolutions authorized the NRD to send the landowners a "Notice of Intent to Issue a Cease and Desist Order and to Issue Penalties."

Shortly thereafter, the NRD sent letters to the landowners stating they may have violated the NRD's rules and regulations and the NGWMPA. Both letters stated that if the landowners requested hearings before the Board, such hearings would be scheduled for September 16, 2020. Both were signed by the NRD manager.

One week later, the NRD sent letters to the landowners with practically identical information but specified a different hearing date if the landowners voluntarily consented to the cease-and-desist order. These letters were also signed by the NRD manager. The landowners requested formal hearings, along with information and documentation related to the NRD's investigation.

In October 2020, the NRD again sent letters to the landowners, reiterating much of the same information and specifying

- 601 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

the alleged violations. However, the October letters were signed by attorney Nicholas J. Ridgeway and were printed on his law firm's letterhead.

The letters indicated that should the landowners request hearings before the Board, such hearings would take place on October 30, 2020, and identified the individual who would serve as the hearing officer. In response, the landowners again requested formal hearings before the Board, along with information and documentation pertaining to the NRD's investigation.

Days before the scheduled hearing date, Ridgeway sent another letter to the landowners' attorney, notifying him of a change in venue for the hearing due to the State's updated COVID-19 health measures.

## Administrative Hearing

On October 30, 2020, separate hearings were conducted by the designated hearing officer before the Board for each of the landowners. Ridgeway and Daniel L. Lindstrom, another attorney who worked at the same law firm as Ridgeway, represented the NRD. The landowners were also represented by counsel. At the hearings, counsel for both parties presented arguments, called and cross-examined witnesses, and offered and objected to evidence.

The Board adopted resolutions finding there was sufficient evidence showing the landowners had violated the NRD's rules and regulations and ordering them to comply with the NRD's cease-and-desist order and order issuing penalties.

The Board stated in its resolutions that before adopting the resolutions, it "consulted with legal counsel, made preliminary determinations and requested that legal counsel draft appropriate documents." In their briefs, the parties reference Ridgeway and Lindstrom as counsel for both the NRD and the Board. Ridgeway sent letters notifying the landowners of the Board's decision and included copies of the resolutions and the cease-and-desist orders.

- 602 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

PETITIONS FOR REVIEW

As relevant to this appeal, the landowners filed petitions for review in the district court pursuant to the APA. They argued the proceedings below were improperly conducted, denying the landowners equal protection and due process of law. Specifically, the landowners claimed the extensive participation by the NRD's counsel during the various stages of the dispute tainted the landowners' due process right to be heard before a neutral, unbiased decisionmaker. The NRD responded that there was no indication the NRD's counsel actually influenced the Board's decision. The NRD did not contend that its counsel during the hearing was different from its counsel that, according to the Board's resolution, was consulted by the Board.

DISTRICT COURT'S DECISION

Because the landowners requested identical relief and alleged identical claims of due process, the district court considered and resolved the petitions together in one opinion. The court determined the involvement of the NRD's counsel in the decisionmaking process, after acting as investigators and prosecutors for the NRD, violated the landowners' due process right to a neutral decisionmaker. The record showed, the court reasoned, that the same attorneys involved in the advocacy and prosecutorial functions of the dispute "were included in the decision-making process of the [NRD] board," thereby "nullif[ying] the presumption of neutrality and impartiality accorded the tribunal."

While acknowledging that, as a matter of law, adjudicators serve with a presumption of honesty and integrity, the district court relied on *In re 2007 Appropriations of Niobrara River Waters*[2] for the proposition that "the same persons who conduct the decision-making at and after an enforcement hearing

---

[2] *In re 2007 Appropriations of Niobrara River Waters*, 283 Neb. 629, 820 N.W.2d 44 (2012).

- 603 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

may not involve themselves directly in any of the investigation, preparation, or prosecution of an enforcement action." Based on this reasoning, the court reversed and vacated the penalties imposed by the NRD's cease-and-desist order.

The NRD appeals the district court's decision. Because the appeals involve identical facts, raise identical assignments of error, and rely on the same arguments, we consolidated the appeals.

## ASSIGNMENTS OF ERROR

The NRD assigns the district court erred by (1) failing to review the Board's decision de novo on the record; (2) failing to find that the landowners violated the rules and regulations of the NRD and the NGWMPA, and to approve the NRD's order imposing a penalty; and (3) finding that the opportunity for a hearing provided by the NRD did not conform to due process.

## STANDARD OF REVIEW

[1-3] A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[3] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4] An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.[5]

[4,5] The determination of whether the procedures afforded an individual comport with constitutional requirements for

---

[3] *Medicine Creek v. Middle Republican NRD*, 296 Neb. 1, 892 N.W.2d 74 (2017).

[4] *Id.*

[5] *Lingenfelter v. Lower Elkhorn NRD*, 294 Neb. 46, 881 N.W.2d 892 (2016).

- 604 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

procedural due process presents a question of law.[6] On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[7]

## ANALYSIS

The NRD argues the district court's decision is not supported by the record, and accordingly, the decision fails to comply with the district court's de novo on the record standard of review and is arbitrary, capricious, unreasonable, and unsupported by competent evidence. The NRD admits its attorneys actively participated and represented the NRD during the hearing. Thus, it does not contest the district court's finding that the NRD's attorneys prosecuted the case on behalf of the NRD during the hearing by making arguments before the hearing officer, objecting to evidence, and cross-examining the landowners' witnesses. Instead, the NRD contests the district court's finding that its attorneys were included in the adjudicatory process of the Board. It also contests the district court's conclusion that the NRD's attorneys' involvement in both prosecutorial and adjudicatory functions rebutted the presumption of honesty and integrity afforded to the Board and demonstrated a probability of actual bias that is too high to be constitutionally tolerable. Because there is competent evidence that the NRD's attorneys were improperly included in the adjudicatory process, we affirm.

In discussing the NRD's due process obligations in this case, both parties rely on cases involving administrative agencies. Although we have observed that a natural resources district is a unit of local government rather than an administrative agency,[8] we follow the parties' lead and assume that

---

[6] *Fleming v. Civil Serv. Comm. of Douglas Cty.*, 280 Neb. 1014, 792 N.W.2d 871 (2011).

[7] *Id*.

[8] *Lingenfelter v. Lower Elkhorn NRD, supra* note 5.

- 605 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

the due process standards governing administrative agencies apply to the NRD. Further, despite a natural resources district's status as a unit of local government, the Legislature has expressly directed the use of APA procedures in resolving challenges to decisions of a natural resources district.[9]

[6,7] A "fair trial in a fair tribunal is a basic requirement of due process."[10] "Not only is a biased decisionmaker constitutionally unacceptable but our system of law has always endeavored to prevent even the probability of unfairness."[11]

[8] A party appearing in an adjudication hearing before an agency or tribunal is entitled to due process protections similar to those given litigants in a judicial proceeding.[12] This includes the right to a hearing before an impartial, unbiased decisionmaker.[13]

[9,10] Decisionmakers are accorded a presumption of honesty and integrity, and of being qualified, unbiased, and unprejudiced.[14] Administrative adjudicators serve with the same presumption.[15] A party seeking to disqualify an administrative adjudicator on the basis of bias or prejudice bears the heavy burden of overcoming that presumption.[16]

[11,12] To overcome the presumption of honesty and integrity of an administrative adjudicator, there must be a

---

[9] See Neb. Rev. Stat. § 46-750 (Reissue 2021).

[10] *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) (internal quotation marks omitted).

[11] *Id.*, 421 U.S. at 47 (internal quotation marks omitted).

[12] *Prokop v. Lower Loup NRD*, 302 Neb. 10, 921 N.W.2d 375 (2019); *Cain v. Custer Cty. Bd. of Equal.*, 298 Neb. 834, 906 N.W.2d 285 (2018).

[13] See, *Prokop v. Lower Loup NRD, supra* note 12; *Stenger v. Department of Motor Vehicles*, 274 Neb. 819, 743 N.W.2d 758 (2008).

[14] 46 Am. Jur. 2d *Judges* § 194 (2017). See 32 Charles Alan Wright et al., Federal Practice and Procedure § 8143 (2023).

[15] *In re 2007 Appropriations of Niobrara River Waters, supra* note 2. See *Withrow v. Larkin, supra* note 10.

[16] *Murray v. Neth*, 279 Neb. 947, 783 N.W.2d 424 (2010). See *Withrow v. Larkin, supra* note 10.

- 606 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
315 NEBRASKA REPORTS
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

showing of actual bias or a showing that "'the probability of actual bias . . . is too high to be constitutionally tolerable.'"[17] Rather than inquiring into whether the judge or adjudicator is "actually, subjectively biased," the question is whether the average judge in his or her position is "likely to be neutral, or whether there is an unconstitutional potential for bias."[18]

[13-15] Central to whether the average administrative decisionmaker in a similar position is likely to be neutral is the extent of separation between the investigative, prosecutorial, and adjudicative roles in the case. In a criminal trial, due process requires the strict separation of investigative, prosecutorial, and adjudicative functions[19]; in an administrative proceeding, due process requires an "[a]dequate separation"[20] of investigative, prosecutorial, and adjudicative roles. As a natural consequence of limited resources in local government, administrative procedures at the local level have traditionally been relaxed.[21] Courts must bear in mind "'"the way particular procedures actually work in practice."'"[22]

---

[17] *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 872, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009) (quoting *Withrow v. Larkin, supra* note 10). See, *Murray v. Neth, supra* note 16; *Davenport Pastures v. Bd. of County Com'rs*, 291 Kan. 132, 238 P.3d 731 (2010); 32 Wright et al., *supra* note 14.

[18] *Caperton v. A. T. Massey Coal Co., supra* note 17, 556 U.S. at 881 (internal quotation marks omitted). See 32 Wright et al., *supra* note 14.

[19] See 16D C.J.S. *Constitutional Law* § 2021 (2015).

[20] Jared R. Faerber, *Administrative Law Bias in Administrative Proceedings*, 1997 Utah L. Rev. 1087, 1095 (1997). See, 2 Am. Jur. 2d *Administrative Law* § 303 (2014). See, also, e.g., 16D C.J.S., *supra* note 19; 73A C.J.S. *Public Administrative Law and Procedure* § 322 (2014); 36 Standard Pennsylvania Practice 2d § 166:125 (Nov. 2023 update).

[21] Kelli Shope, *Balancing Administrative Efficiency and Fairness: Restrictions on Local Hearing Advisors Post-*Nightlife Partners, Ltd. v. City of Beverly Hills, 24 J. Nat. Assn. Admin. L. Judiciary 51 (2004).

[22] *In re 2007 Appropriations of Niobrara River Waters, supra* note 2, 283 Neb. at 645, 820 N.W.2d at 59 (quoting *Murray v. Neth, supra* note 16). See *Withrow v. Larkin, supra* note 10.

- 607 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

[16-19] Accordingly, we have recognized that the mere fact that investigative, prosecutorial, and adjudicative functions are combined within one administrative agency does not give rise to a due process violation.[23] "[A]dequate separation of [administrative] functions can be accomplished internally at the individual level rather than at the institutional level."[24] To some extent, combinations of investigative, prosecutorial, and adjudicative functions in the same administrative agency inhere in the very nature of the administrative process.[25] Requiring administrative agencies to maintain a rigid separation of functions would deprive agencies of the flexibility needed to conduct their complex and varied functions.[26]

In *Withrow v. Larkin*,[27] the U.S. Supreme Court addressed investigative and adjudicative functions combined within one medical agency and found it did not violate due process. After holding several investigative hearings regarding alleged criminal behavior by a physician licensed to practice medicine, the governing medical board, pursuant to statute, directed its secretary to file a complaint with the district attorney to initiate a contested hearing before the board seeking to revoke the physician's license based on the alleged crimes.[28] The district court enjoined the medical board from enforcing the statute, reasoning that a statute allowing the medical board to "'suspend [the physician's] license at [the Board's] own contested hearing on charges evolving from [the Board's] own investigation'" would deny the physician his procedural due process rights.[29]

---

[23] *In re 2007 Appropriations of Niobrara River Waters, supra* note 2.

[24] See Faerber, *supra* note 20, 1997 Utah L. Rev. at 1095. See, also, 16D C.J.S., *supra* note 19; 73A C.J.S., *supra* note 20.

[25] See *In re 2007 Appropriations of Niobrara River Waters, supra* note 2.

[26] See Faerber, *supra* note 20.

[27] *Withrow v. Larkin, supra* note 10.

[28] *Id*.

[29] *Id.*, 421 U.S. at 42.

- 608 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
315 NEBRASKA REPORTS
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

The U.S. Supreme Court disagreed. It explained, "The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias . . . must overcome a presumption of honesty and integrity in those serving as adjudicators . . . ."[30] The Court further explained, "[I]t must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."[31]

The Court in *Withrow* analogized the situation presented to a judge who presides over a bench trial after finding probable cause to issue an arrest warrant or after finding sufficient evidence at a preliminary hearing to hold the defendant for trial. The medical board, the Court observed, only investigated whether proscribed conduct had occurred, and the physician and his counsel were present throughout the investigative proceeding and knew the facts presented to the medical board. That the medical board later would also determine if violations had been committed, warranting suspension of the physician's license, did not create an unacceptable risk of bias. The Court explained, "The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the [b]oard members at a later adversary hearing."[32]

This is because

[t]he risk of bias or prejudgment in this sequence of functions has not been considered to be intolerably high or to raise a sufficiently great possibility that the adjudicators would be so psychologically wedded to their

---

[30] *Id*., 421 U.S. at 47.

[31] *Id*.

[32] *Id*., 421 U.S. at 55.

- 609 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

complaints that they would consciously or unconsciously avoid the appearance of having erred or changed position.[33] Indeed, "there is no incompatibility between the agency filing a complaint based on probable cause and a subsequent decision, when all the evidence is in, that there has been no violation of the statute."[34] The Court held that "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation."[35] However, that did not "preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high."[36]

[20,21] The "realistic appraisal of psychological tendencies and human weakness"[37] is different when the "same person on the same case"[38] participates in adjudicatory functions after acting in a prosecutorial role. It has been said that exercising both prosecutorial and adjudicatory functions is "'inherently suspect.'"[39] It is

> the general rule that a combination of prosecutorial and adjudicative functions in the same person is incompatible with due process, such as where the person prosecuting a case on behalf of a public body is also a member of the decision-making body or advisor to it on the same matter."[40]

---

[33] *Id*., 421 U.S. at 57.

[34] *Id*.

[35] *Id*., 421 U.S. at 58.

[36] *Id*.

[37] *Id*., 421 U.S. at 47.

[38] Robert R. Kuehn, *Addressing Bias in Administrative Environmental Decisions*, 37 J. Nat. Assn. Admin. L. Judiciary 693, 748 (2018).

[39] *Id*.

[40] *Id*. at 749.

- 610 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

Accordingly, administrative agency counsel who performs as an advocate in a given case is generally precluded from advising a decisionmaking body in the same case.[41]

[22-24] An administrative prosecutor or advocate, "[b]y definition," is "partisan for a particular client or point of view."[42] Generally, the role of prosecutor "is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator."[43] The prosecutor or advocate in an administrative proceeding generally will have a "'will to win'— 'a psychological commitment to achieving a particular result because of involvement on the agency's team.'"[44] And it may be "'difficult for anyone who has worked long and hard to prove a proposition . . . to make the kind of dramatic change in psychological perspective necessary to assess that proposition objectively . . . .'"[45]

Thus, we opined in *In re 2007 Appropriations of Niobrara River Waters* that "[w]hen advocacy and decisionmaking roles are combined, true objectivity, a constitutionally necessary characteristic of an adjudicator, is compromised."[46] However, we have not had occasion to directly address dual prosecutorial and adjudicatory roles. In *In re 2007 Appropriations of Niobrara River Waters*,[47] we ultimately found the same

---

[41] See 2 Am. Jur. 2d, *supra* note 20.

[42] *Howitt v. Superior Court*, 3 Cal. App. 4th 1575, 1585, 5 Cal. Rptr. 2d 196, 202 (1992).

[43] *Id*.

[44] *Botsko v. Davenport Civil Rights Com'n*, 774 N.W.2d 841, 849 (Iowa 2009) (quoting Michael Asimow, *When the Curtain Falls: Separation of Functions in the Federal Administrative Agencies*, 81 Colum. L. Rev. 759 (1981)).

[45] *Id*. (quoting 2 Richard J. Pierce, Jr., Administrative Law Treatise § 9.9 (4th ed. 2002)).

[46] *In re 2007 Appropriations of Niobrara River Waters, supra* note 2, 283 Neb. at 644, 820 N.W.2d at 59 (internal quotation marks omitted).

[47] *In re 2007 Appropriations of Niobrara River Waters, supra* note 2.

- 611 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

person was not involved in both prosecutorial and adjudicatory functions.

In *In re 2007 Appropriations of Niobrara River Waters*, the Nebraska Department of Natural Resources appeared as a party advocate through a designated staff attorney, but it appointed an independent attorney as the hearing officer, and the director of the department issued the final order in the case without participation of the staff attorney. We observed that there was no evidence or argument that the director requested the staff attorney to gather or present specific evidence or that the director and the staff attorney had any communication regarding the outcome of the proceedings. We said, "The separation of functions within an administrative agency, allotting the prosecutorial function to a staff of attorneys or other personnel *who will not participate in the eventual decision*, is a common and recommended feature of administrative enforcement activity."[48]

The Iowa Supreme Court, in *Botsko v. Davenport Civil Rights Com'n*,[49] was presented with an agency representative who performed a prosecutorial function and also participated in the decisionmaking process in an advisory role. The court held that this participation in both advocacy and adjudicatory functions violated due process.[50]

*Botsko* involved proceedings under an employee's complaint with a civil rights commission, alleging her employer maintained a hostile work environment. During the hearing, the director of the commission acted as an advocate for the employee, sitting at the table with the employee, engaging in off-the-record conferences with the employee's attorney, and failing to object when the presiding officer stated both the employee's attorney and the director bore the burden of proof in the case. Then, at the close of the hearing, the

---

[48] *Id.*, 283 Neb. at 645, 820 N.W.2d at 59 (emphasis supplied).

[49] *Botsko v. Davenport Civil Rights Com'n, supra* note 44.

[50] *Id.*

- 612 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

director joined the commission for its closed-door delib-
erations—apparently participating only to advise the commis-
sioners if they had questions, to discuss procedures, and to
record votes.[51]

On appeal from a ruling in favor of the employee, the Iowa
Supreme Court agreed with the employer that the director's
presence during closed-door deliberations violated its due proc-
ess right to a neutral decisionmaker. The court held that the
director engaged in advocacy on behalf of the employee dur-
ing the hearing and that this prosecutorial activity precluded
the director from later participating in the decisionmaking
process.[52] Participating in the commission's deliberations after
acting as the employee's advocate created "the appearance of
fundamental unfairness" and deprived the employer of his right
to due process.[53]

In so holding, the court in *Botsko* rejected the commission's
argument that the director did nothing more than answer
questions during the closed session. First, the court reasoned
that the appearance of fundamental unfairness through the
combination of advocacy and adjudicative functions created
a risk of injecting bias in the adjudicatory process such that
the employer was not required to show actual prejudice. In
any event, the court found "little comfort" in the evidence
that the director did nothing more than simply answer ques-
tions or in the commission members' averments that they had
made their findings independently.[54] The court observed that
a skilled advocate can accomplish a great deal by answering
questions in a way favorable for his or her client.[55] Holding
the employer's due process rights were violated, the court

---

[51] *Id*.

[52] *Id*.

[53] *Id*. at 853.

[54] *Id*.

[55] *Id*.

- 613 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

vacated the commission's decision and remanded the matter for further proceedings.[56]

The facts of this case are like those presented in *Botsko*. The district court found that the same attorneys who acted as investigators and prosecutors in the case were involved in the decisionmaking process of the Board. We disagree with the NRD's assertion that this finding of dual involvement in prosecutorial and adjudicatory functions is unsupported by competent evidence in the record.

[25-28] Our inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[57] Competent evidence means evidence that tends to establish the fact in issue.[58] It is evidence that is admissible and relevant on the point in issue.[59] A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion.[60] A capricious decision is one guided by fancy rather than by judgment or settled purpose.[61] The term "unreasonable" can be applied to a decision only if the evidence presented leaves no room for differences of opinion among reasonable minds.[62]

The record contains the Board's resolution that states:

> [T]he Board . . . held a hearing on Friday, October 30, 2020, a hearing duly called and with a quorum of the Board . . . present. The Board consulted with legal

---

[56] *Id*.

[57] *Medicine Creek v. Middle Republican NRD, supra* note 3.

[58] *Shepherd v. City of Omaha*, 194 Neb. 813, 235 N.W.2d 873 (1975), *disapproved on other grounds, Caniglia v. City of Omaha*, 210 Neb. 404, 315 N.W.2d 241 (1982).

[59] *Id*.

[60] *Gelco Fleet Trust v. Nebraska Dept. of Rev.*, 312 Neb. 49, 978 N.W.2d 12 (2022).

[61] *Id*.

[62] *Id*.

- 614 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

counsel, made preliminary determinations and requested
that legal counsel draft appropriate documents. Thereafter,
on November 10, 2020, at a regular meeting of the Board,
the Board adopted the following resolution[.]"

This resolution provides some basis that would lead a reasonable person to conclude that after the hearing but before the Board issued its decision, the Board consulted with the NRD's legal counsel during an adjudicatory process. The resolution tends to establish that the later adoption of the resolutions at a subsequent regular meeting merely formalized the decision the Board had reached during the decisionmaking process in which it "consulted with legal counsel" and had counsel "draft appropriate documents."

[29] The NRD did not argue to the district court that the attorneys whom the Board consulted after the hearing were different attorneys than those who prosecuted the case. And the NRD did not specifically assign and specifically argue in its appellate brief that the district court erred in finding that the attorneys consulted by the Board after the hearing were the same attorneys who prosecuted the case on behalf of the NRD. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party assigning the error.[63] Regardless, the record shows that after the Board formally adopted the resolutions at its regular meeting, Ridgeway, one of the attorneys who represented the NRD at the hearing, sent letters notifying the landowners of the Board's decision, which included copies of the resolutions and the cease-and-desist orders. There is no indication in the record that the NRD changed its legal counsel between the time of the hearing and the commencement of its decisionmaking process. The record sufficiently supports the district court's finding that the same attorneys both prosecuted the case on behalf of the NRD and participated in the Board's decisionmaking.

---

[63] *Bellino v. McGrath North*, 274 Neb. 130, 738 N.W.2d 434 (2007).

- 615 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

[30] While the record does not disclose the precise nature of the consultation with legal counsel—in part because the APA does not authorize a district court's reviewing the decision of an administrative agency to receive additional evidence[64]—such details are not decisive of the question of due process presented. Because the NRD's attorneys were acting as prosecutors, attempting to prove at the hearing that the landowners had committed the alleged violations, there was too high a probability of actual bias for it to be constitutionally tolerable to permit those same attorneys to be included in the decisionmaking process of the Board to determine if those violations had been proved. Under such circumstances, the NRD no longer enjoyed the presumption of honesty and integrity. The partisan nature of an advocacy role at the hearing is incompatible with the neutrality constitutionally required of an adjudicator.

"As is often the case with respect to procedural due process, the question is one of line-drawing and balancing."[65] While administrative agencies are afforded a great deal of flexibility, based upon this record, we cannot conclude that the district court erred in its finding that the NRD crossed the line by having its attorneys participate in both the prosecution and adjudicatory process of the case.

[31,32] When the facts and circumstances of administrative proceedings show an improper combination of functions such that there exists a risk of bias on the part of the decisionmaker that is too high to be constitutionally tolerable, this amounts to "structural error" requiring reversal.[66] The Supreme Court

---

[64] *Medicine Creek v. Middle Republican NRD, supra* note 3.

[65] *Botsko v. Davenport Civil Rights Com'n, supra* note 44, 774 N.W.2d at 852.

[66] See Zygmont A. Pines, *Mirror, Mirror, On the Wall—Biased Impartiality, Appearances, and the Need For Recusal Reform*, 125 Dick. L. Rev. 69, 106 (2020). See, also, *Williams v. Pennsylvania*, 579 U.S. 1, 136 S. Ct. 1899, 195 L. Ed. 2d (2016); *Greenway v. Schriro*, 653 F. 3d. 790 (9th Cir. 2011).

- 616 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
315 NEBRASKA REPORTS
UHRICH & BROWN LTD. PART. v. MIDDLE REPUBLICAN NRD
Cite as 315 Neb. 596

has held that the right to an impartial adjudicator is "'so basic to a fair trial that [its] infraction can never be treated as harmless error.'"[67] Therefore, the district court properly reversed the Board's decision after finding the NRD and its attorneys violated the landowners' due process right to a neutral decisionmaker. We accordingly disagree with the NRD's assignment that the district court erred by failing to find that the landowners violated the rules and regulations of the NRD and the NGWMPA and by failing to approve the NRD's order imposing a penalty.

## CONCLUSION

The district court's order conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. The problem here could have been avoided by the Board consulting with the selected hearing officer during its deliberations and then relaying its ultimate decisions to agency counsel, who acted as prosecutors in this matter. We affirm the order of the district court.

AFFIRMED.

---

[67] See, *Gray v. Mississippi*, 481 U.S. 648, 668, 107 S. Ct. 2045, 95 L. Ed. 2d 622 (1987); *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). See, also, *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012) (quoting *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000)); R. Collin Mangrum, Mangrum on Nebraska Evidence § 27-103 (2023).