IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

RAMOS V. EDITH H.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JONATHAN F. RAMOS, APPELLANT,

V.

EDITH H., APPELLEE.

Filed April 1, 2025.    No. A-24-492.

Appeal from the District Court for Platte County: JASON M. BERGEVIN, Judge. Affirmed.

Jonathan F. Ramos, pro se.

No appearance by appellee.

RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

INTRODUCTION

Jonathan F. Ramos, pro se, appeals from the Platte County District Court's order denying his request for a protection order against Edith H. We affirm.

BACKGROUND

Ramos and Edith worked together at a company in Schuyler, Nebraska. They began an intimate relationship in 2023. On May 3, 2024, Ramos filed a "Petition and Affidavit to Obtain Harassment Protection Order" against Edith. Ramos alleged that on April 20, 2023, Edith misunderstood him and reported something to their supervisor, after which the supervisor told Ramos to stop harassing Edith or he would be fired. Ramos alleged that on May 25, Edith "made an officer arrest [him] 05/15/23 DUI" and that he never drove. He alleged that on July 15, they were sleeping together, and Ramos accidentally hit her eye. She had recently had surgery on that eye. She reported to her "boss" that Ramos hit her. He also refers to an incident where Edith "told

- 1 -

me shut down from teach American Sign Language Class at college which is many women make her jealous." He claimed, "I got tired, I told shut down. She harrassed [sic] stop, stop slap my face. Class ASL 11/23-01/24." He claimed Edith "harassed" him to give her his cell phone to "find women." "She caught one woman" where "'bebe'" was used and she got angry and slapped him even though he explained to her the reference was to a "baby shower party girl or boy" for a lady friend. Ramos "felt this is third strike" due to Edith making mistakes and then forgiving him. He also claimed Edith "filed false against [him] in court" and that he needed a protection order. We note here that there are other cases on appeal involving protection orders sought and obtained against Ramos.

A hearing on Ramos' request for a harassment protection order took place on June 7, 2024. Both he and Edith appeared pro se. Ramos was assisted by two "American Sign Language Interpreters" who appeared by "Zoom teleconference." Edith was assisted by two "Spanish Language Interpreters." Ramos' petition and affidavit were received as evidence at the hearing. Ramos' testimony was generally consistent with the allegations in his petition. He testified that after the April 2023 incident at work, Edith kept "reaching out to [him] over and over," and that she "came to [his] home, and . . . it was very uncomfortable." Regarding the May incident, Ramos testified that he had been drinking, but not driving, but was arrested. He appeared to attribute the arrest to Edith. As for the July incident, he said he "accidentally hit her [in the eye] while we were sleeping" "where she had had surgery." Edith reported to her "boss" that Ramos had hit her. Finally, he testified about being asked to teach a "free ASL class" and this made Edith jealous and angry. Edith told Ramos to stop teaching the class, questioned him about another woman, and then "slapped [him] and hit [him] again." "And at that point, I was wondering, like, is she bipolar, what's going on, and somebody said, yeah, she's taking medicine." Ramos said that Edith "came back again, begging me, apologizing." And he said, "I don't want this. I feel like my heart and soul are broken, and that's when I filed -- or, why she had filed here in the court against me. . . . requesting that order." Upon questioning from the district court, Ramos said this incident occurred "[o]n Thanksgiving [2023]." He said that Edith slapped his face and that it hurt "really bad." He claimed she hit him "over and over" and "[i]t burned."

Ramos called other witnesses, one of whom was dismissed after it was determined that she was going to be asked to explain the difference "between domestic violence and just feeling threatened or feeling harassed by someone." The district court stated, "That's a legal issue for the Court to consider. I'm well aware of the difference in the context of a protection order." A deputy was called to testify about a separate incident occurring on April 7, 2023, but since Ramos had not identified that particular incident in his petition, the court declined Ramos' request to "add that now."

The district court informed the parties that the alleged slapping could support a domestic abuse protection order. The court asked Ramos if he wanted the court to consider his petition as a request for a domestic abuse protection order in addition to his request for a harassment protection order. Ramos responded affirmatively. The court informed Edith that it would be considering Ramos' request for both types of protection orders and gave Edith an opportunity to continue the case if she was not ready to proceed under those circumstances. Edith declined, indicating that she was ready to proceed.

Edith testified that she and Ramos had been in an intimate relationship. She denied having an argument with or slapping Ramos on Thanksgiving Day in 2023; she "spent the whole day cooking." She said she prohibited Ramos from drinking that day and "[a]ll was good that day." Edith did not "remember very well" the alleged incidents in April, May, or July 2023.

The district court entered an "Order Dismissing Petition and Affidavit to Obtain Harassment Protection Order (After Hearing, No Ex Parte Order Issued)" on June 10, 2024. It also filed its "Findings" the same day. It found that the evidence adduced about the incidents occurring in April, May, and July 2023 did not establish by a preponderance of the evidence that Edith engaged in a knowing and willful course of conduct directed at Ramos which seriously terrified, threatened, or intimidated him and which served no legitimate purpose. It further stated that the court had the "opportunity to observe the credibility of both parties during the hearing" and that it found Ramos' testimony about the alleged slapping "not credible." The court pointed out that while Ramos testified that the incident occurred on Thanksgiving 2023, his petition and affidavit made no reference to a specific date and did not allege that the incident occurred on Thanksgiving. "The fact that the incident happened on Thanksgiving would be memorable to [Ramos] at the time he requested a protection order. The omission of this fact from his Petition and Affidavit leads the Court to find that the slapping did not occur as he alleges." The court therefore also found that the evidence did not establish by a preponderance of the evidence that Edith abused Ramos. It denied and dismissed with prejudice Ramos' petition.

Ramos appeals.

## ASSIGNMENTS OF ERROR

Ramos assigns that the district court (1) "abused its discretion in reinstating the case and disregarding Appellee's argument that the 'committed against his disability' specified in Neb. Rev. Stat. § 28-110 [(Reissue 2016)], was inapplicable"; (2) erred in "dismissal Appellee for Protection Order to Appellant"; and (3) "demonstrated personal bias and prejudice against [him] because of his disability[,] [a]nd 18 USC Ch. 73: Obstruction [of] Justice." He also claims (4) that the "Judge's labeling of Appellee as 'deceitful, underhanded, and fraudulent' [i]ndicates a deep-seated antagonism which would make fair judgment impossible."

We observe here that Ramos' references to appellant and appellee erroneously implicate the wrong party. We will proceed in our analysis with the understanding that Ramos' references to the "Appellee" refer to himself and references to "Appellant" refer to Edith.

## STANDARD OF REVIEW

The grant or denial of a protection order is reviewed de novo on the record. *Diedra T. v. Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.* However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

The argument section of Ramos' brief is disjointed and difficult to follow; Edith did not file a brief. As will be discussed below, the bulk of Ramos' "argument" appears to reference matters in other cases, which are not relevant here.

Ramos' first assignment of error is that the district court abused its discretion in "reinstating the case and disregarding [his] argument that the 'committed against his disability' specified in Neb. Rev. Stat. § 28-110, was inapplicable." Brief for appellant at 5. In support, he first contends that the district court's "labeling" of him as "'deceitful, underhanded, and fraudulent' [i]ndicates a deep-seated antagonism which would make fair judgment impossible." *Id.* at 9. He then, without any further discussion, states, "Neb.28-311.02.(a). Stalking and harassment; legislative intent; terms, defined." Brief for appellant at 10. He then references "harm" from "Karen vs. Ramos (A-24-0431) and Edith vs[.] Ramos (A-24-0466)." Brief for appellant at 10. Finally, he states the following:

On April 5, 2024, [Edith] has stalking at [Ramos] loss of employment . . . [Edith] forced [Ramos] forced marry on March 8, 2024[,] to avoid deported. The evidence does that Respondent stalking at Petitioner. On April 20, 2024 and on May 25, 2023 and November 23, 2023[,] January 30, 2024 forced ASL class shut down [a]nd [Edith] filed on April 10, 2024 to kick out at [Ramos] when [Edith] mocking [a]t disability. Karen vs. Ramos (A-24-0431) and Edith vs[.] Ramos (A-24-0466). (T-40)

Brief for appellant at 10.

Ramos appears to be making arguments related to matters raised in the other appeals he references. There is nothing in the record in the present appeal where the district court labeled Ramos as "'deceitful, underhanded, and fraudulent.'" Nor is there anything in the present record involving any discussion of § 28-110 [right of person to live free from violence or destruction of property regardless of person's race, color, religion, ancestry, national origin, gender, sexual orientation, age, or disability]. Nor is there anything in his argument above that explains why the evidence did not support the court's decision to deny his request for a harassment or domestic abuse protection order. Other than the reference to the "ASL class shut down," which he does not expand upon, Ramos is clearly referencing facts raised in other cases, which we are unable to address in this appeal.

Ramos next addresses his assigned error that the district court "demonstrated personal bias and prejudice" against him. Brief for appellant at 5. He claims that the "[j]udge's labeling of [Ramos] and his actions as 'deceitful, underhanded, and fraudulent' [i]ndicates a deep-seated antagonism which would make fair judgment impossible." *Id.* at 11. As noted above, there is nothing in the present record showing that the court labeled Ramos' actions as he alleges. He also claims that he requested "at the Court of report to live person ASL interpreter in email sent and Judge refused or forsake because of the Zoom kept disconnection." *Id*. However, there was no objection made at the hearing regarding his interpreters appearing by Zoom. Further, although there was a brief period of technical difficulties, it was quickly resolved and the hearing proceeded without any further technical problems. Ramos also argues, "[Edith] and [t]he [d]istrict court are bad company to ruined good morale [Ramos] suffer because of his disability and request the judge

- 4 -

suspended for 6 months and [Edith] to put Protection Order from stalker and domestic violence to suffer by his disability and loss of employment and suspend driver and loss of apartment and false protection or order." *Id*. He again cites to two other cases on appeal that were filed against him, which are of no relevance here. We find no merit to Ramos' claim that the court demonstrated bias in the present case.

Finally, although Ramos assigned error to the district court's dismissal of his request for a protection order, he does not make any argument specific to that alleged error. He makes no argument whatsoever as to how he met his burden of proof regarding either a harassment protection order or a domestic abuse protection order. Accordingly, we decline to address this assigned error. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party assigning the error. *Uhrich & Brown Ltd. Part. v. Middle Republican NRD*, 315 Neb. 596, 998 N.W.2d 41 (2023).

CONCLUSION

Upon our de novo review of the record, we find no error in the district court's decision to deny Ramos' request for a protection order against Edith.

AFFIRMED.