IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE EX REL. NEBRASKA REAL ESTATE COMMISSION V. HART

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE EX REL. NEBRASKA REAL ESTATE COMMISSION, APPELLEE,

V.

MARK DOUGLAS HART, APPELLANT, AND BRIDGET A. OLSEN, APPELLEE.

Filed May 5, 2026.    No. A-25-450.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Michael F. Polk, of Watke, Polk & Sena, L.L.P., for appellant.

Michael T. Hilgers, Attorney General, Cody S. Barnett, and Lincoln J. Korell, for appellee State ex rel. Nebraska Real Estate Commission.

MOORE, PIRTLE, and FREEMAN, Judges.

FREEMAN, Judge.

### INTRODUCTION

Mark Douglas Hart appeals from the order of the district court for Lancaster County affirming the Nebraska Real Estate Commission's (NREC) finding that Hart unlawfully offered property for sale without the owner's consent in violation of Neb. Rev. Stat. § 81-885.24 (12) (Cum. Supp. 2025). Hart assigns error to the district court's determination that he did not obtain equitable ownership until October 20, 2020, and to its finding that he offered the property for sale without the owner's consent. For the reasons set forth below, we affirm.

### BACKGROUND

In September 2022, the State, on behalf of the NREC, filed a complaint against Hart alleging that he offered property for sale without the owner's consent, misrepresented ownership, and failed to disclose material adverse facts to the purchaser. Following an evidentiary hearing,

- 1 -

the NREC issued an order suspending Hart's real estate salesperson license. The district court, acting as an appellate court, affirmed the order in part. The following relevant facts were presented at the evidentiary hearing and reviewed by the district court.

*Factual Background.*

In September 2020, Dominic Mendolia and Vickie Mendolia met with Hart, then a licensed real estate salesperson, to discuss selling their rental property in Bellevue. At that time, Dominic suffered from chronic health conditions and the property was in poor condition due to tenants' behavior and lack of upkeep. Hart testified that Dominic offered to sell the property to Hart for $110,000. Hart further testified that he told the Mendolias that he intended to clean up the property and flip it for a profit. According to Hart, Dominic told Hart that he did not "care what [Hart did] with [the property]."

Hart asserted that the parties executed an initial 10-page purchase contract: however, Hart was unable to produce the alleged document at the hearing. Hart maintained that the 3-page purchase agreement replaced the 10-page contract and that the parties reached a full cash agreement under which he would purchase the property as a for-sale-by-owner transaction, separate from his role as a real estate salesperson. Following the September meeting, Hart immediately began working on the property.

Hart told other agents in his office, "I purchased a house, cash, and was going to close as soon as we could get the title work done, and he was physically able to do the scenarios." Bridget Olson, Hart's coworker, indicated she had a client that might be interested in the property. Olson's client, Michael Hansen, was an out-of-state single-family home investor. In October 2020, Olson described the property to Hansen by telephone. Hansen testified he believed Hart represented the Mendolias in the sale.

On October 9, 2020, the Mendolias signed a purchase agreement in full for $110,000. The purchase agreement was received as an exhibit at the hearing. A review of the purchase agreement reflects that Hart signed only the certification and the disclosure sections. On October 14, Hansen made an offer for the property. On October 18, Hansen signed a purchase agreement for $200,000, and Hart signed it the following day. Hart did not disclose that he did not yet own the property or hold the deed. Hart testified that, in his "mind, [he] did own the property, [he] paid cash for it."

On October 20, 2020, Hart signed the execution provision of the Mendolias' purchase agreement. He closed with the Mendolias on November 2, 2020, though the warranty deed was dated October 29. He then closed with Hansen on November 13, with the warranty deed dated November 11. Dominic died in 2021 after the Mendolias closed on the property.

Vicki testified that she did not authorize Hart to resell the property, and she did not know that Hart had done so. However, she did not know whether her husband had given consent. Hart acknowledged that he had no written authorizations from the Mendolias to sell their property before his closing with them.

*Procedural Background.*

In October 2021, Hansen filed a complaint with the NREC against Hart, claiming that Hart had failed to disclose that the property had been condemned, failed to forward security deposits from tenants, and misrepresented the tenants' monthly rent for the property.

In September 2022, the NREC filed a complaint against Hart alleging that he offered property for sale without the owner's consent and entered into a purchase agreement before acquiring the property, in violation of § 81-885.24(12). The NREC further alleged that Hart misrepresented himself as the owner, in violation of § 81-885.24(22), and failed to disclose an adverse material fact regarding a previous pet on the property in violation of Title 299, Chapter 5-003.20 and § 81-885.24(29).

The NREC held a hearing in August 2024 and determined that Hart violated § 81-885.24(12), (22), and (29). Based on those violations and Hart's prior disciplinary record for selling property without owner consent, the NREC suspended his license for 2 years, ordered 90 days served with the remainder stayed, required 9 continuing education hours, imposed a $2,500 civil fine, and required payment of the court reporter's fee. Hart appealed the decision to the district court.

In May 2025, the district court entered an order ruling on Hart's appeal. The court found that Hart did not become the equitable owner until October 20, 2020, and that the owners did not consent to the sale before that date. The court therefore affirmed the violation of § 81-885.24(12). However, the court reversed the findings of misrepresentation and material disclosure. The court remanded for reconsideration of discipline limited to the sole violation of § 81-885.24(12).

Hart appeals.

## ASSIGNMENT OF ERROR

Hart assigns, restated, that the district court erred by finding that he offered real estate for sale without the knowledge and consent of the owner.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Uhrich & Brown Ltd. Part. v. Middle Republican NRD*, 315 Neb. 596, 998 N.W.2d 41 (2023). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Uhrich & Brown Ltd. Part. v. Middle Republican NRD, supra*. An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id*.

## ANALYSIS

Hart assigns that the district court erred in affirming the NREC's finding that he violated § 81-885.24(12) by offering the property for sale without the owner's knowledge and consent. He contends that he became the equitable owner on October 9, 2020, and that Vicki was aware of his intent to sell the property. The record supports the district court's rejection of both arguments.

Under § 81-885.24(12), a licensee commits an unfair trade practice by offering real estate for sale without the knowledge and consent of the owner on terms other than those authorized by the owner. An "owner" includes any person holding legal or equitable interest in property. See Neb. Rev. Stat. § 69-1301(h) (Reissue 2018). The Nebraska Supreme Court has clarified the scope

of equitable ownership. In *Choice Homes v. Donner*, 311 Neb. 835, 853-54, 976 N.W.2d 187, 201 (2022), the court explained:

> If the owner of real estate enters into a contract of sale whereby the purchaser agrees to buy and the owner agrees to sell it and the vendor retains the legal title until the purchase money or some part of it is paid, the ownership of the real estate as such passes to and vests in the purchaser, and that from the date of the contract the vendor holds the legal title as security for a debt as trustee for the purchaser.

Consistent with this principle, the Supreme Court recognized that "property owned," by its plain and ordinary meaning, includes equitable title. See *id*. Equitable title is obtained upon execution of a purchase agreement. See *id*. An "executed document" is one which "has been fully and properly signed by all the parties." Black's Law Dictionary 609 (12th ed. 2024).

Here, the purchase agreement, received as an exhibit, contained a designated execution provision identifying where the parties were required to sign to effectuate the contract. Although the Mendolias signed the agreement on October 9, 2020, Hart did not sign the execution provision until October 20. His earlier October 9 signatures appeared only on the certification and disclosure sections. Hart did not assert that the language of the purchase agreement, including the execution provision, was generally ambiguous. Based on the provision in the purchase agreement, the agreement was not fully executed until October 20, and Hart did not obtain equitable ownership before that date. Accordingly, the district court correctly determined that Hart was not an owner when he sold the property to Hansen on October 18.

Competent evidence also supports the finding that Hart lacked the owners' consent to offer the property for sale before acquiring equitable ownership. Vicki testified that she did not authorize Hart to resell the property and did not know that he had done so. Hart admitted he had no written authorization to market or sell the property prior to closing. No evidence was offered to establish consent from either Dominic or Vicki.

Under the governing standard, we do not reweigh evidence where the district court's findings are supported by competent evidence and conform to the law. See *Uhrich & Brown Ltd. Part. v. Middle Republican NRD*, 315 Neb. 596, 998 N.W.2d 41 (2023). Because the record supports the determination that Hart offered the property for sale before obtaining equitable ownership or the owner's consent, the district court did not err in affirming the violation of § 81-885.24(12).

CONCLUSION

We affirm the order of the district court because it conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.

AFFIRMED.