IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

PERRY V. BOTTLINGER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DETRON L. PERRY, APPELLANT,

V.

JASON B. BOTTLINGER AND BOTTLINGER LAW L.L.C., ET AL., APPELLEES.

Filed October 14, 2025.    No. A-24-506.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

DeTron L. Perry, pro se.

Jim K. McGough, of McGoughLaw, P.C., L.L.O., for appellees Jason B. Bottlinger and Bottlinger Law, L.L.C.

Leslie S. Stryker Viehman and Jacqueline F. Tabke, of Nolan, Olson & Stryker, P.C., L.L.O., for appellees Cody Haddock and Allstate Insurance Company.

Timothy J. Thalken and Olivia F. Stanek, of Fraser Stryker, P.C., L.L.O., for appellees Stephen Kalhorn et al.

PIRTLE, BISHOP, and FREEMAN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

DeTron L. Perry, pro se, filed a complaint against Jason B. Bottlinger and Bottlinger Law L.L.C. (collectively Bottlinger), alleging numerous claims, including professional negligence, regarding Bottlinger's representation of Perry in a personal injury case for injuries Perry suffered in a motor vehicle collision. The Douglas County District Court granted summary judgment in favor of Bottlinger and dismissed Perry's action. Perry appeals. We affirm.

- 1 -

## II. BACKGROUND

### 1. UNDERLYING ACCIDENT AND LEGAL REPRESENTATION

In September 2017, Perry sustained injuries when he was hit by an intoxicated driver in the parking lot of a Bucky's gas station.

On September 14, 2018, Perry entered into an agreement for professional legal services with Bottlinger. The agreement provided in relevant part:

1. [Perry] engages [Bottlinger] to represent [Perry] in connection with claims arising from a September 10, 2017, motor vehicle collision. . . . [Bottlinger] accepts this engagement, subject to its right to withdraw following investigation.

2. [Bottlinger] and its personnel shall devote due diligence and reasonable professional efforts to the matter for which it is engaged. Any settlement of [Perry's] claim must be authorized by [Perry] in advance.

. . . .

4. [Perry] shall compensate [Bottlinger] for its services by paying (a) a contingent fee equal to one-third (1/3) of the gross amount recovered for [Perry], if [Perry's] claim is settled prior to filing suit; . . . and (d) all out-of-pocket expenses and costs incurred by [Bottlinger] . . . .

. . . .

11. **Matters involving Subrogation, Reimbursement or Lien Claims.** [Perry's] engagement of [Bottlinger] includes the matter described in paragraph 1 above, but it does not include professional efforts required to negotiate, or litigate, subrogation, reimbursement or lien rights or claims of third parties, including, but not limited to, healthcare providers, insurers, or others with subrogation rights, claims or interests. All services rendered in connection with such liens or claims shall be performed by [Bottlinger] for additional compensation . . . .

. . . .

15. **Lawyer's Discretion.** [Bottlinger] is not obligated (a) to prosecute claims or advance arguments it believes are without merit, or cannot be prosecuted in good faith, or (b) to investigate every matter raised by [Perry] regardless of its suitability and may, in its discretion, make appropriate professional judgments concerning the desirability, sufficiency, relevance, and persuasiveness of potential witnesses, arguments, claims, contentions, or procedures that might be used on [Perry's] behalf.

(Emphasis in original.) Bottlinger was subsequently able to settle with Allstate Insurance Company (at-fault driver's insurer) for $50,000 and The General (Perry's insurer) for $25,000 "UIM." It is undisputed that the settlements represented the maximum policy limits from each insurer.

A Trust Distribution Statement dated December 21, 2020, lists "Sums to be Received in Trust" of $50,000 from Allstate and $25,000 from The General. It also lists "Distributions" to Bottlinger for $25,000 (fees) and $2,403.57 (expenses), and to Perry for $3,000 ("Interim Settlement Distribution"). And it includes a "Balance Held in Trust" in the amount of $44,596.43 to be used for "resolution and/or payment of" a "Settlement Loan Payment," "Medicaid Reimbursement[s]," and "Medical Lien Payment[s]" to specified providers and in specified

amounts. (The amount of the settlement loan payment, Medicaid reimbursements, and medical lien payments exceeded the balance held in trust.) The Trust Distribution Statement included the following typewritten language:

> [Perry] acknowledges that there may be additional claims and expenses including, but not limited to, reimbursement and/or lien claims asserted by [Perry's] health insurance carrier(s) and/or healthcare providers. [Perry] instructs [Bottlinger] NOT to resolve or investigate any potential claims, liens or expenses other than the claims described above.

The document was signed by both Perry and Bottlinger. Below their signatures, the following handwritten language appears on the document: "I, DeTron Perry, instruct my lawyer to accept the above described settlement payments, and stop all efforts to investigate or discover any additional applicable insurance policies, including, but not limited to, underinsured motorist coverage." Perry once again signed the document below the handwritten language.

Another Trust Distribution Statement was dated December 22, 2020. It contains nearly identical information for the "Sums to be Received in Trust," "Distributions," and "Balance Held in Trust." Additional typewritten language includes: "[Perry] agrees to settlement on the above-stated terms and agree[s] that all claims and expenses (including but not limited to medical expenses, liens, subrogation claims and reimbursement claims) are [Perry's] responsibility regardless of whether they are described above." The document was signed by both Perry and Bottlinger. Below their signatures was additional typewritten language:

> Warning:
>
> Receipt of the above-referenced funds could (and most likely will) reduce or eliminate your entitlement to and receipt of all asset based or need based government, health and welfare benefits, including but not limited to medicaid and social security supplemental income. . . . It is against my advice to receive any funds from your settlement unless such funds are paid directly into an ENable account or a Special Needs Trust.
>
> Acknowledgment:
>
> I, DeTron Perry, have reviewed the warning above, and I understand that receiving funds from my settlement will likely result in reduction or loss of government, health or welfare benefits, including but not limited to Medicaid and social security supplemental income. I understand these risks, and I wish to receive my settlement distribution paid directly to me. My lawyer has advised me against the course of action I am choosing. I have instructed him to pay the settlement distribution described above directly to me.

(Emphasis omitted.) Perry once again signed the document below this Warning and Acknowledgment.

Also on December 22, 2020, Perry asked Bottlinger about potential claims against Bucky's related to the collision, and if Bottlinger had pursued any such claims. Bottlinger informed Perry that he had not pursued any claims against Bucky's and was unaware of a good-faith legal or factual basis for the pursuit of such claims; additionally, Bottlinger believed that any claims against Bucky's were beyond the scope of the agreement for services.

In a "Termination Letter" dated December 31, 2020, Perry ended his attorney-client relationship with Bottlinger "effective immediately," citing "Lack of Communication,"

"Dishonesty," "Inaccurate Billing," and "Inadequate Legal Work." Perry instructed Bottlinger to "not take any further actions on my behalf."

Perry subsequently filed a grievance against Bottlinger with the Counsel for Discipline. In a letter to Perry dated May 24, 2021, the Counsel for Discipline stated that, after completing its investigation, it found there was no evidence that Bottlinger engaged in unethical conduct, and it dismissed Perry's grievance.

### 2. SEPARATE LAWSUIT AGAINST BUCKY'S

On August 5, 2021, Perry, pro se, filed a complaint against Steve Buchanan and Buchanan Energy, operating L.L.C. of Bucky's, alleging negligence regarding the injuries Perry sustained when he was hit by an intoxicated driver on the defendants' premises in September 2017. On January 27, 2022, the Douglas County District Court granted the defendants' motion to dismiss, with prejudice, for failure to state a claim upon which relief could be granted (either under a negligence or premises liability analysis). This court subsequently affirmed. See *Perry v. Buchanan*, 31 Neb. App. 715, 988 N.W.2d 537 (2023).

### 3. CURRENT LAWSUIT

Perry filed a pro se complaint against Bottlinger on December 14, 2022, alleging professional negligence in his handling of the motor vehicle collision case.

On January 23, 2023, Perry filed an amended complaint against Bottlinger and "Does 1 through 11" alleging professional negligence and eight additional claims. However, on August 23, the district court dismissed the action against Does 1 through 11 pursuant to Neb. Rev. Stat. § 25-217 (Cum. Supp. 2024) (if any defendant is not properly served within statutory timeframe, then the action against that defendant is dismissed by operation of law).

In August 2023, Perry filed a second amended complaint, without leave of the district court, naming additional parties. Following a hearing in October, the court granted Perry leave to file his second amended complaint, and it was deemed to have been filed on October 11, 2023. Leave to file a third amended complaint was denied. Perry's second amended complaint is the operative complaint.

Perry's second amended complaint was against the following defendants: Bottlinger; Stephen Kalhorn and Buchanan Energy, L.L.C.; Cody Haddock and Allstate Insurance; and Katherine McLaughlin and Federated Insurance Company. Perry alleged that Kalhorn was the legal representative, general counsel, and/or agent for Buchanan Energy; Haddock was an employee, supervisor adjuster, and/or agent of Allstate Insurance; and McLaughlin was an employee, supervisor adjuster, and/or agent of Federated Insurance Company. (It was later established that Federated Insurance Company was Buchanan Energy's insurer. Buchanan Energy is also referred to as Bucky's and Buck's Inc. in the record; we will use Buchanan Energy or Bucky's in this opinion.)

Perry alleged nine causes of action "[a]gainst [a]ll [d]efendants": (1) professional negligence, (2) breach of fiduciary duty, (3) fraudulent misrepresentation, (4) negligent misrepresentation, (5) fraudulent concealment, (6) fraud, (7) breach of written contract, (8) breach of the implied covenant of good faith and fair dealing, and (9) unjust enrichment. Perry generally alleged that Bottlinger misrepresented the amount of the insurance settlements he procured for

Perry; fraudulently received settlements totaling "hundreds of thousands, if not millions, of dollars," which he "embezzled and stole[] from Perry" for his own personal use and benefit; failed to act competently; intentionally gave Perry inaccurate legal advice regarding potential claims against Bucky's to "deceive [Perry] from his property"; and overcharged Perry. Perry also generally alleged that all the defendants "conspired together" to commit the acts alleged. Perry sought various damages, "recovery of the Defendants' secret profits/or commission," restitution, interest, and costs. Bottlinger subsequently filed an answer denying the claims against him.

On September 19, 2023, Kalhorn, Buchanan Energy, and Federated Insurance filed a motion to dismiss Perry's second amended complaint pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6), failure to state a claim upon which relief can be granted. They claimed that the current litigation against them was barred by res judicata because the matters were or could have been litigated in a prior action. See *Perry v. Buchanan, supra*. Following a hearing on October 11, and after taking judicial notice of the prior lawsuit, the district court granted the motion to dismiss the second amended complaint with respect to Kalhorn, Buchanan Energy, McLaughlin, and Federated Insurance; all claims against these four defendants were dismissed with prejudice.

On November 20, 2023, Bottlinger filed a motion for summary judgment. Perry filed his motion for summary judgment on January 22, 2024.

A hearing on the motions for summary judgment was held on February 20, 2024. Bottlinger offered into evidence several exhibits, including his affidavit, Perry's responses to Bottlinger's interrogatories and production of documents, and Perry's complaint and the district court's order of dismissal from the previous lawsuit against Bucky's; all exhibits were received into evidence. Perry offered into evidence numerous exhibits, including insurance policies, correspondence with insurance companies, releases signed by Perry, trust distribution statements and trust account information from Bottlinger, a billing statement from Bottlinger, correspondence with Bottlinger, correspondence with the Counsel for Discipline, hundreds of pages of Perry's medical records, Perry's employment information and earning statements, Perry's tax returns, and information regarding Perry's 401(k); some exhibits were received, but others were not received. The relevant evidence will be discussed as necessary later in our analysis.

Bottlinger argued that he had negotiated to get Perry the maximum policy limits from the at-fault driver's insurance ($50,000) and Perry's underinsured motorist coverage ($25,000). Everything was explained to Perry, he signed releases to both insurance companies, and he signed the trust disbursement sheets. According to Bottlinger, this was "a very traditional personal injury case where the full policy limits were less than what [Perry] thought he was entitled to," and Perry's claims against Bottlinger were based "on some wild conspiracy theory, without any evidence whatsoever." On questioning by the district court, Perry acknowledged that Bottlinger recovered the policy limits from the two insurance companies, but Perry "inform[ed] the Court" that his medical bills exceeded the insurance policy limits "and that didn't include my lost wages," or "pain and suffering." Perry also claimed that Bottlinger "concealed . . . relevant information about . . . the premises liability he pursued" and money recovered.

On March 1, 2024, the district court entered an order granting Bottlinger's motion for summary judgment and denying Perry's motion for summary judgment.

On March 11, 2024, Perry filed a motion for new trial. That motion was denied by the district court on June 25. On July 2, the district court dismissed the action against the remaining

defendants, Haddock and Allstate Insurance, pursuant to § 25-217 (if any defendant is not properly served within statutory timeframe, then the action against that defendant is dismissed by operation of law).

Perry filed his notice of appeal on July 8, 2024.

## III. ASSIGNMENTS OF ERROR

Perry assigns, reordered, that the district court erred by (1) "excluding civil subpoenaed witnesses, including . . . Kalhorn and . . . McLaughlin, who held direct evidence pertinent to [the] case," (2) judicially noticing his prior case against Steve Buchanan and Buchanan Energy "without affording [him] the opportunity to present relevant, new evidence," (3) "excluding [his] independent complaint against Steve Buchanan for premises liability," and (4) "granting summary judgment to [Bottlinger] without sufficient consideration of [his] claims and relevant evidence."

## IV. STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Woodward v. Saint Francis Med. Ctr.*, 316 Neb. 737, 6 N.W.3d 794 (2024). An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id.*

## V. ANALYSIS

### 1. DISMISSAL OF PARTIES

In his initial brief, Perry did not specifically assign error to the district court's dismissal of Kalhorn and Buchanan Energy, Haddock and Allstate Insurance, and McLaughlin and Federated Insurance as parties to the action; he therefore waived any alleged error regarding the dismissal of those parties. See *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014) (errors not assigned in appellant's initial brief are waived and may not be asserted for first time in reply brief). See, also, *Uhrich & Brown Ltd. Part. v. Middle Republican NRD*, 315 Neb. 596, 998 N.W.2d 41 (2023) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued); *Jacob v. Nebraska Bd. of Parole*, 313 Neb. 109, 982 N.W.2d 815 (2022) (pro se party held to same standards as one who is represented by counsel).

### 2. CIVIL SUBPOENAED WITNESSES

Perry assigns that the district court erred by "excluding civil subpoenaed witnesses, including . . . Kalhorn and . . . McLaughlin, who held direct evidence pertinent to [the] case." Brief for appellant at 10. However, in the argument section of his brief, Perry does not point to any specific order or hearing where the alleged exclusions occurred. Additionally, in the argument section of his brief, Perry stated that the "court improperly excluded [his] supplemental affidavit." *Id.* at 17. However, that alleged error was not specifically assigned in the assignments of error section of his brief. Accordingly, we will not consider the alleged exclusion of subpoenaed

witnesses or Perry's supplemental affidavit. See *Uhrich & Brown Ltd. Part. v. Middle Republican NRD, supra*.

### 3. JUDICIAL NOTICE OF PRIOR CASE

Perry claims that the district court erred in judicially noticing his prior case against Steve Buchanan and Buchanan Energy without affording him the opportunity to present relevant, new evidence. However, the law is well established that when cases are interwoven and interdependent and the controversy involved has already been considered and determined by the court in the former proceedings involving one of the parties now before it, the court has a right to examine its own records and take judicial notice of its own proceedings and judgments in the former action. *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006). Additionally, the doctrine of res judicata, or claim preclusion, bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *RM Campbell Indus. v. Midwest Renewable Energy*, 294 Neb. 326, 886 N.W.2d 240 (2016). The doctrine bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action. *Id.* Accordingly, we find the district court did not err when it took judicial notice of Perry's prior case against Steve Buchanan and Buchanan Energy.

### 4. INDEPENDENT COMPLAINT AGAINST STEVE BUCHANAN

Perry also claims that the district court erred in excluding his independent complaint against Steve Buchanan for premises liability. Steve Buchanan was never named as a defendant in the current case involving Bottlinger. It appears that Perry is referring to a claim against Steve Buchanan that was dismissed, with prejudice, in Perry's previous lawsuit against Steve Buchanan and Buchanan Energy. Perry's attempt to challenge the dismissal of his complaint against Steve Buchanan in the prior lawsuit is an impermissible collateral attack. See *Parish v. Parish*, 314 Neb. 370, 991 N.W.2d 1 (2023) (collateral attacks on previous proceedings are impermissible unless attack is grounded upon court's lack of jurisdiction over parties or subject matter; only void judgment may be collaterally attacked).

### 5. SUMMARY JUDGMENT

Perry claims that the district court erred by granting summary judgment to Bottlinger without sufficient consideration of his claims and relevant evidence.

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023). The Nebraska Supreme Court has long held that the party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. *Id.* If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.* But in the absence of a

prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial. *Id.*

Perry claims that "[t]he district court failed to recognize genuine issues of material fact, including evidence of [Bottlinger's] negligence and conspiracy." Brief for appellant at 13.

### (a) Professional Negligence and Breach of Fiduciary Duty

In his second amended complaint, Perry's "First Cause of Action" was for "Professional Negligence," and his "Second Cause of Action" was for "Breach of Fiduciary Duty." He alleged that Bottlinger "agreed to advise [him] as to the coverage policies that [were] available that may compensate [him] for his damages" from the September 2017 motor vehicle collision. Perry then alleged that Bottlinger "failed to use the skill and care that a reasonable attorney would have used in similar circumstances" and "fail[ed] to make decisions in good faith and in a reasonably prudent matter [sic]" by "[m]isrepresenting [his] ability to procure coverage for [Perry]," "[i]llegally releasing the claim with a fully signed certificate of [Perry's] signature for insurance coverage without the consent and/or knowledge of [Perry]," charging attorney fees for inadequate legal work and inaccurate billing, "[b]inding unnecessary duplicated trust distribution statements," "[n]egligently referring work to other law firm or lawyers without [Perry's] permission," and "[c]overing up their predatory embezzlement scheme through manipulation and deceit." Perry also believed that Bottlinger used his position as Perry's "lawyer[] and/or agent[]" "to obtain a secret profit and/or commission by collecting necessary and/or inflated insurance coverage."

In a civil action for legal malpractice, a plaintiff alleging attorney negligence must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss (damages) to the client. *Gilbert v. Johnson*, 318 Neb. 105, 13 N.W.3d 469 (2024). There is no dispute that Perry employed Bottlinger, so we turn to whether Bottlinger neglected a reasonable duty.

Attorneys owe their clients the duty to exercise such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances. *Rice v. Poppe*, 293 Neb. 467, 881 N.W.2d 162 (2016). And, as the summary judgment movant, Bottlinger had the burden to produce evidence that he did not breach that duty. See *id.* The general standard of an attorney's conduct is established by law, but whether an attorney's conduct fell below the standard in a particular case is a question of fact. *Id.* Expert testimony is generally required to show whether an attorney's performance conformed to the standard of conduct. *Id.* An attorney moving for summary judgment must generally make a prima facie case by producing expert testimony that his or her conduct did not fall below the standard of care. *Id.* However, where the evidence and the circumstances are such that the recognition of the alleged negligence may be presumed to be within the comprehension of laypersons, no expert testimony is required. *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999). An affidavit of a defendant attorney in a malpractice case, which affidavit states the defendant did not breach the appropriate standard of conduct, presents a prima facie case of lack of negligence for the purposes of summary judgment. See, *Rice v. Poppe, supra*; *Boyle v. Welsh, supra*.

Bottlinger's affidavit stated the following: Bottlinger secured the policy maximums from two insurance policies, Perry signed releases for the two insurance companies, and Perry signed the Trust Distribution Statements. Bottlinger did not receive any additional funds, and there were

no additional funds that could be received because the policy maximums had been secured, and Bottlinger did not pursue a claim against Bucky's because no factual basis existed for such a claim. Bottlinger did not broker any secret or undisclosed deals or withhold additional funds from Perry. After Perry terminated Bottlinger's legal representation, Bottlinger provided Perry with a full copy of his case file. Bottlinger was entitled to be compensated for his fees and expenses pursuant to the Agreement for Professional Services. Bottlinger stated that his representation of Perry met the applicable standard of care; he therefore established a prima facie case for purposes of summary judgment on the professional negligence claim. The burden then shifted to Perry to produce evidence showing the existence of a material fact as to whether Bottlinger was negligent. Perry produced no such evidence, via expert testimony or otherwise.

The plaintiff in an action for breach of fiduciary duty has the burden to prove that (1) the defendant owed the plaintiff a fiduciary duty, (2) the defendant breached the duty, (3) the defendant's breach was the cause of the injury to the plaintiff, and (4) the plaintiff was damaged. Bottlinger's affidavit established a prima facie case for purposes of summary judgment on the breach of fiduciary duty claim. The burden then shifted to Perry to produce evidence showing the existence of a material fact as to whether Bottlinger breached his fiduciary duty; once again, Perry produced no such evidence.

We note that in his brief, Perry argues that the district court excluded relevant evidence that would have supported his claim. However, Perry did not assign error to the district court's exclusion of evidence. See *Uhrich & Brown Ltd. Part. v. Middle Republican NRD*, 315 Neb. 596, 998 N.W.2d 41 (2023) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued).

### (b) Breach of Written Contract and Unjust Enrichment

The evidence presented by Bottlinger also established a prima facie case that he fulfilled his written contract with Perry and that he was not unjustly enriched (i.e. he did not receive more than his contractual fees and costs). Perry produced no evidence showing the existence of a material fact to the contrary.

### (c) Other Causes of Action

Perry's other causes of action were for fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraud, and breach of the implied covenant of good faith and fair dealing. In his brief, Perry focuses his arguments as to these claims on Bottlinger's actions regarding Bucky's. We will do the same.

Perry contends that Bottlinger withheld and concealed "relevant material relating to the settlement transaction and pursuit of premises liability coverage with the intention to defraud and/or deceive or mislead [Perry] upon recovery," and Bottlinger's actions "prevented [Perry] from pursuing a claim against [Bucky's]" for premises liability. Brief for appellant at 16.

As noted previously, Bottlinger's affidavit stated that he did not pursue a claim against Bucky's because no factual basis existed for such a claim. After Perry terminated Bottlinger, he was provided a full copy of his case file. Bottlinger's affidavit established a prima facie case for purposes of summary judgment on the five causes of action noted above. The burden then shifted to Perry to produce evidence showing the existence of a material fact, but he produced no such

evidence. In fact, despite Bottlinger's belief that there was no factual basis for a claim against Bucky's, Perry proceeded to file a pro se lawsuit against Bucky's; that lawsuit was dismissed, with prejudice, for failure to state a claim upon which relief could be granted (either under a negligence or premises liability analysis). See *Perry v. Buchanan*, 31 Neb. App. 715, 988 N.W.2d 537 (2023).

### (d) Bottlinger Entitled to Summary Judgment

Viewing the record in the light most favorable to Perry, we find that the district court correctly granted summary judgment in favor of Bottlinger.

### 6. ATTORNEY FEES

In their joint brief, Kalhorn, Buchanan Energy, McLaughlin, and Federated Insurance Company request an award of "their fees for the costs of defending this frivolous appeal." Brief for appellee at 14. However, their request does not comply with the appellate court rules for seeking such an award. See Neb. Ct. R. App. P. § 2-106(G) (rev. 2025).

### VI. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting Bottlinger's motion for summary judgment and dismissing Perry's second amended complaint.

AFFIRMED.